**Pamela Lou WOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54325.**

Court of Criminal Appeals of Texas, Panel No. 3.

July 19, 1978.

Rehearing En Banc Denied Nov. 29, 1978.

Clyde W. Woody and Marian S. Rosen, Houston, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., James K. Johnson and Gerald A. Banks, Asst. Dist. Attys., Dallas, for the State.

Before ROBERTS, ODOM and TOM G. DAVIS, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for aggravated promotion of prostitution. Punishment was assessed at five years' imprisonment and a five thousand dollar fine.

The sufficiency of the evidence is not challenged.

In her first ground of error, the appellant contends the trial court committed reversible error by not sustaining her plea to the jurisdiction and venue. The appellant was arrested on November 13, 1975, at her residence in Lewisville, which is located in Denton County. At the time of the arrest, law enforcement officials executed a search warrant and seized thirteen telephones, telephone recording equipment, and some 2,000 index cards and stenographic pads containing the names of male customers used in the prostitution enterprise. Just before the arrest of the appellant, Dallas police officers arrested two women at a Dallas motel who had arrived to fill dates of prostitution with two undercover vice squad officers. These two women came to the motel in response to a telephone call placed by Officer Fowler of the Dallas Police Department approximately an hour before to the appellant at her residence in Lewisville. Officer Fowler testified that he was familiar with the voice of the appellant, who also went by the name of "Syn" and that he had on prior occasions spoken with her at the same telephone number. Arrangements involving the two women were discussed during the telephone conversation, including price.

The appellant argues that the instant offense could only be prosecuted in Denton County. The State counters that Dallas County was the only county in which venue would be proper.

Article 13.18, V.A.C.C.P., the general venue statute, provides:

"If venue is not specifically stated, the proper county for the prosecution of offenses is that in which the offense was committed."

No other special venue provision in chapter 13 governs the instant case. Thus, the key issue is, in what county was the offense committed?[1]

V.T.C.A., Penal Code Sec. 43.04(a), provides:

"(a) A person commits an offense if he knowingly owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes."

The elements of this offense are:

(1) a person;

(2) knowingly (3) owns, invests, finances, controls, supervises, or manages;

(4) a prostitution enterprise;

(5) that uses two or more prostitutes.

In *Taylor v. State*, Tex.Cr.App., 548 S.W.2d 723, we defined "prostitution enterprise" as used in V.T.C.A., Penal Code Sec. 43.04, to mean "a plan or design for a venture or undertaking in which two or more persons offer to, agree to, or engage in sexual conduct in return for a fee payable to them."

In the present case we are convinced that the offense was committed in two counties, Denton and Dallas. Some of the elements occurred in Denton County, and at least one of the elements of the offense occurred in Dallas County. While the appellant was arrested in Denton County and the search warrant was executed there and her "enterprise" was apparently based out of Denton County, the two prostitutes were arrested in Dallas County. They were a part of the "venture" or "undertaking" and both *agreed to engage in sexual conduct in return for a fee payable to them* in Dallas County. Further, it is conceivable that an individual can own, invest, finance, control, supervise or manage an operation in several counties at once, although the base of the operation, in the form of telephones, telephone recording equipment, lists, ledgers, typewriters, etc., is physically located only in a single county.

In applying Art. 13.18, supra, to the facts of this case, we resort to Article 5429b–2, V.A.C.S., the Code Construction Act. Section 1.01 thereof provides:

"This Act provides rules to aid in the construction of codes (and amendments to them) enacted pursuant to the state's continuing statutory revision program."

This Act is applicable to aid in the construction of Chapter 13 of the Code of Criminal Procedure, which was amended in Acts 1973, 63rd Leg., ch. 399, pp. 883, 976–979. Sec. 1.02, supra.

Section 2.02(b) of the Act provides:

"The singular includes the plural, and the plural includes the singular."

With the aid of this provision in the Code Construction Act, Art. 13.18, V.A.C.C.P. can be read as follows:

"If venue is not specifically stated, the proper *counties* for the prosecution of offenses *are those* in which the offense was committed."

This interpretation resolves the dilemma that is presented when a single offense is committed in more than one county and the terms of the special venue provisions are inapplicable, as is the situation in the

---

1. At this juncture, it should be pointed out that Art. 13.19, V.A.C.C.P., "Where venue cannot be determined," is not dispositive of the present situation. That article provides:

"If an offense has been committed within the state and it cannot readily be determined within which county or counties the commission took place, trial may be held in the county in which the defendant resides, in the county in which he is apprehended, or in the county to which he is extradited."

This article appears to control only where there is factual uncertainty as to the locus of the crime, not where there are legal disputes as to the locus of the commission of certain elements of the offense. See generally *Hignite v. State*, Tex.Cr.App., 522 S.W.2d 210.

present case. Were it not so construed, crimes that are committed in more than one county and which do not fall within any of the special venue provisions of Chapter 13 of the Code of Criminal Procedure could not be prosecuted in any county. Article 1.26, V.A.C.C.P., states:

"The provisions of this Code shall be liberally construed, so as to attain the objects intended by the Legislature: the prevention, suppression and punishment of crime."

We hold that venue in the present case was proper either in Dallas or Denton Counties; therefore, the trial court did not err in denying appellant's motion for change of venue.

■ The appellant next contends that the trial court committed reversible error and abused its discretion in allowing Sgt. Duncan of the Dallas Police Department to testify as an expert about the contents of two thousand 3 × 5 index cards and several stenographic pads seized during the execution of the search warrant. The State qualified Duncan as an expert with respect to client lists generally used in prostitution enterprises.

Duncan testified that prior to the instant case he had investigated between thirty and forty aggravated promotion of prostitution cases. He further stated that lists similar to those seized in the present case had been confiscated by him on at least ten prior occasions and that in his experience the overwhelming majority of the trick lists seized all maintained the same symbols. When asked how he had arrived at his conclusion as to what certain symbols stood for, Duncan responded, " . . . the trick lists I have seized, I've been able to seize a code that the procurers and prostitutes themselves had written down." He stated that a code was not, however, seized in the instant case.

The trial court acted within its discretion in ruling that Duncan was qualified as an expert witness in the matter.

In her third ground of error the appellant contends that the court committed reversi-ble error by failing to suppress evidence seized in an allegedly unlawful search. Several arguments are presented by the appellant in support of this ground of error and accordingly each will be considered separately.

### (A) *Improper Designation of Personal Property*

■ The appellant asserts that the search warrant was defective and void due to the improper designation of the personal property to be seized as implements used in the commission of an offense. The search warrant affidavit commences: "Affidavit to Search for and Seize Implements Used in the Commission of Offenses," and describes the property as implements

" . . . kept for the purpose of aiding in the commission of an offense defined by the Penal Code of the State of Texas, to wit: Section 43.04, Aggravated Promotion of Prostitution and that the implements concealed in such premises are described as: telephones, telephone recording equipment, records containing names of clients involved in the prostitution enterprise (i. e. trick lists)."

The search warrant itself contains the same language.

The appellant argues the property items were improperly classified as criminal instruments, citing *Universal Amusement Co., Inc. v. Vance*, 404 F.Supp. 33 (S.D.Tex. 1975). In that case the court found that the plaintiff therein "ha(d) proven harassment and prosecution undertaken by state officials in bad faith without hope of obtaining a valid conviction. . . ." under V.T.C.A., Penal Code Sec. 16.01. Here, however, appellant was not charged with nor convicted of violating Sec. 16.01, supra. No effort was made to convict the appellant under the criminal instrument statute for possessing telephones, telephone recording equipment and trick lists. Thus, *Universal Amusement Co., Inc.*, supra, does not address the issue in the present case. Moreover, the search warrant was issued to search for and seize "implements or instruments used in the commission of a crime,"

not "property specially designed, made, or adapted for or commonly used in the commission of an offense." See and compare Article 18.02(2) and (9). Thus, the appellant's contention that the "items of personalty sought to be seized were improperly classified as criminal instruments" is overruled.

### (B) *Abuse of Dallas County Grand Jury Summonsing Power and Appellant's Right of Privacy*

■ The appellant argues that the police in investigating the present case

"Improperly utilized the Grand Jury Summonsing power to seize the unlisted telephone number of Virgil J. Etchieson and evidence of the unlisted number (and that) the Grand Jury's action was not empowered by statute and said power was not otherwise within the Grand Jury's scope of authority."

Appellant has no standing to complain of any allegedly unlawful seizure of information from Southwestern Bell. The subpoenaed matters tendered by Southwestern Bell were monthly billing statements of J. Etchieson and the information that the telephone number 231–9061 was registered in Etchieson's name.

In *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), the Supreme Court stated:

"The general rule (is) that the issuance of a subpoena to a third party to obtain the records of the party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time the subpoena is issued." at 444, 96 S.Ct. at 1624.

And in *United States v. Hilton*, 534 F.2d 556 (3rd Cir. 1975), cert. den., 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976), the court held that even if "the grand jury subpoena was an improper substitute for a search warrant issued by an impartial judicial officer . . . that (the defendant therein) lack(ed) standing to present such (a) contention" where the records involved did not belong to the defendant.

In *Galbraith v. United States*, 387 F.2d 617, 618 (5th Cir. 1957), it was held:

"The guarantees of the Fourth and Fifth Amendments are essentially personal privileges that cannot be projected to the seizures of papers and effects of another or to suppress the incriminating aspects of such records. Those records admitted in evidence which were the property of the bank were lawfully produced, appellant had no right in or to them, and consequently had no standing to premise his objection."

■ We conclude that appellant has failed to demonstrate that her rights were violated by issuance of the grand jury subpoena.

### (C) *Failure to Allege Sufficient Supporting Facts In The Search Warrant Affidavit to Give Rise to the Existence of Probable Cause*

Appellant next argues that the search warrant affidavit lacked adequate or sufficient supporting facts to show probable cause to issue the search warrant. The affidavit in pertinent part contained the following information:

"I have been informed of the foregoing setout facts by a person who I know to be reliable, credible and trustworthy, who states the following facts: I, the affiant, am a police officer with the Dallas Police Department. On 12 November, 1975, I personally talked to a concerned citizen (hereinafter referred to as "citizen") whose identity I do not wish to disclose at this time. On that date, the citizen, who I believe to be reliable, credible, and trustworthy, related to me the following facts: During the last three months, the citizen has received telephone calls in which a female caller attempted to set up dates of prostitution with the citizen. On each occasion the citizen refused such offers. On 11 November, 1975, the citizen received a message to call a certain Dallas telephone number (i. e., 231–9061). The citizen recognized the telephone number to be the same number that was used in the attempts to set up the dates

of prostitution. The citizen contacted me in the Dallas Police Department on 12 November, 1975. I then instructed the citizen to return the telephone call to 231–9061 and to attempt to set up a date of prostitution.

"The citizen then called 231–9061 and was instructed by a recorded message to leave his name and telephone number and that he (the citizen) would receive a return telephone call. A few minutes later, the citizen received the return call. The citizen related the context of the telephone call to me, as follows: The caller identified herself as 'Sin' and asked for the purpose of the call. 'Sin' also asked the citizen for the name of the person who gave him her 231–9061 telephone number. The citizen answered that he was merely returning her telephone call. 'Sin' then asked the citizen whether he knew a 'Willie Cates.' It appeared to the citizen that 'Sin' was reading the name from some type of list. The citizen did not recognize the reference name, but the citizen's son did recognize the name. (The citizen's son told me that he had previously been to a stag party with a Willie Cates where prostitutes had participated). The citizen then set up a date of prostitution for 13 November, 1975. The citizen was to call 'Sin' on 13 November, 1975, to arrange for a meeting place. The telephone conversation then· ended. On 13 November, 1975, I contacted the Southwestern Bell Telephone Company in Dallas with a Grand Jury subpoena for the records of phone number 231–9061. I was personally informed by the Security Office of Southwestern Bell, that the telephone number 231–9061, is still registered in the name of J. Etchieson.

"I know the reputation of Virgil John Etchieson, and know that he has a reputation as a keeper of bawdy houses and as a pimp. On 13 November, 1975, I talked with Sergeant Roger Duncan of the Dallas Police Department who told me that he personally knows Virgil John Etchieson; and he related the following facts to me:

"Sergeant Duncan arrested Virgil John Etchieson at his residence located at Route 3, Box 435, Lewisville, Denton County, Texas. This arrest was made on 20 December, 1974. At that time, the telephone number registered at the house was 231–9061; at the time of the arrest, telephone recording equipment, (i. e., equipment that was used to record the names of men requesting dates of prostitution), trick books, and items used in the operation of a house of prostitution such as lubricants, dildos, and other prostitution enterprise equipment were seized. Those persons who were arrested on that date were: (1) Virgil John Etchieson, (2) Pamela Lou Wood aka. 'Sin' and (3) Christine Holley. On 15 October, 1975, Virgil John Etchieson was convicted for aggravated promotion of prostitution (for the offense that culminated in the December, 1974, arrest).

"On 13 November, 1975, I personally received a telephone call from Officer J. L. Chandler of the Dallas Police Department. Officer Chandler informed me that he arrested two women who offered to fill dates of prostitution with Officer Chandler and Officer D. P. Winterbauer. These two women met the officers at a Dallas motel in response to a telephone call to 'Sin' at 231–9061. The call was made on behalf of the citizen by Sergeant B. F. Fowler; the place of the meeting was determined during the telephone conversation.

"While I do not desire to name the citizen nor his son for security reasons, I believe them to be reliable, credible, and trustworthy because the citizen and his son have not been arrested, charged with, or convicted of a violation of the law in Dallas County, Texas. Furthermore, the citizen has owned his own business for several years in Dallas County, and his son has also been gainfully employed at this location for some time. I believe that the information that the citizen and his son has provided me is credible, reliable, and trustworthy.

"Furthermore, Sergeants Duncan and Fowler, and Officers Chandler and Win-

terbauer, are all experienced Dallas Police Officers and each has an excellent reputation for truth and credibility. I believe that the information provided to me by them is credible, reliable, and trustworthy.

"Wherefore, I ask that a warrant to search and seize the said implements at the above described premises be issued in accordance with the law in such cases provided."

█ It is apparent that the search warrant affidavit in question contains facts and information predicated on no less than three principal informants, two of whom are named, and also on facts and information within the personal knowledge of the affiant. Equally apparent is the fact that the implements allegedly concealed on the premises to be searched are of three types: telephones, telephone recording equipment and trick lists (records containing the name of clients involved in the prostitution enterprise). In determining whether or not the search warrant affidavit in question passes muster under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and its progeny, it is necessary to review the allegations of each of the informants and the affiant as to each class of implements seized under the warrant.

In *Aguilar v. Texas*, supra, the Supreme Court held:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant . . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . was 'credible' or his information 'reliable'. Otherwise, 'the inferences from the facts which led to the complaint' will be drawn not 'by a neutral and detached magistrate', as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of fer-

reting out crime' . . . ." at 114–115, 84 S.Ct. at 1514.

Also, an otherwise inadequate tip from an informant under *Aguilar* can be salvaged by other information contained in the affidavit. In *Spinelli v. United States*, 393 U.S. 410, 415–416, 89 S.Ct. 584, 588, 21 L.Ed.2d 637 (1969), the Supreme Court reasoned:

"The informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar*, the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration? *Aguilar* is relevant at this stage of the inquiry as well because the tests it establishes were designed to implement the long standing principle that probable cause must be determined by a 'neutral and detached magistrate,' and not by 'the officer engaged in the often competitive enterprise of ferreting out crime.' . . . A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which—even when partially corroborated—is not as reliable as one which passes *Aguilar's* requirements when standing alone."

█ We have held that a deficiency in *either* of the *Aguilar* prongs "may be supplied by independent corroboration on the part of the affiant or affiants." *Stoddard v. State*, Tex.Cr.App., 475 S.W.2d 744. Of course, as the language of *Spinelli* itself indicates, the corroboration, when needed, can be based upon "the other allegations" contained in the search warrant affidavit, which will not always be those of an affiant or affiants, but which can be those of other *informants*.

*Telephones*

The affidavit in the present case contains sufficient information to support the magistrate's finding of probable cause to search the residence in question to seize the telephones. Some of the underlying circumstances contained in the affidavit from which it can be concluded that the telephones were where they were claimed to be are these:

(1) That for three months prior to November 12, 1975, the citizen informant received telephone calls from a female individual in which attempts were made to set up dates of prostitution;

(2) That on November 11, 1975, the citizen informant received a message to call a certain Dallas telephone number, 231–9061, a number recognized by the citizen as being the same number used in the prior attempts to set up a date of prostitution;

(3) That pursuant to police instruction, the informant called the telephone number, received an instruction to leave his name and phone number and that his call would be returned;

(4) The return call was received a few minutes later, the caller identified herself as "Syn."

(5) A date of prostitution was set up for November 13, 1975;

(6) The affiant personally contacted the Security Office of Southwestern Bell with a Grand Jury subpoena and was informed that the telephone number 231–9061 was still registered in the name of J. Etchieson;

(7) That Etchieson's residence was located at Route 3, Box 435, Lewisville, Denton County, Texas, and that the telephone number registered at the house was 231–9061. This information was provided by a named informant, Sgt. Duncan of the Dallas Police Department, who personally told affiant that he had arrested Etchieson at his residence at the aforementioned address; and finally,

(8) That another named informant, Officer J. L. Chandler also of the Dallas Police Department, met, and personally contacted the affiant and told him that he (Chandler) had arrested two women at a Dallas motel who had offered to fill dates of prostitution with two officers after meeting them in response to a phone call made to "Syn" at 231–9061 by Sgt. B. F. Fowler on behalf of the citizen informant.

As far as the reliability and credibility of the citizen informant is concerned, the underlying circumstances from which the affiant concluded that the citizen informant "was credible or his information reliable" are insufficient. The affidavit stated that the citizen had not been arrested, charged with or convicted of a violation of the law in Dallas County, and that he owned his own business in Dallas County for several years.

In *Adair v. State*, Tex.Cr.App., 482 S.W.2d 247, we held:

"The averments that the informant (1) lacked a criminal record; (2) had a reputation in the neighborhood (ostensibly a good one); and (3) was well thought of by fellow associates was minimally adequate and comported with the requirements of *Aguilar*."

In *Wetherby v. State*, Tex.Cr.App., 482 S.W.2d 852, the averments found sufficient therein were that the informant was:

"(1) Gainfully employed and (2) was well thought of by the people in the community in which he lived; and (3) that the informant had no criminal record with this department (Austin) or with the Department of Public Safety."

In *Yantis v. State*, Tex.Cr.App., 476 S.W.2d 24, the information relative to the second prong of *Aguilar* found to be sufficient was that the informant had (1) an excellent reputation in the neighborhood which he resided; (2) continuous gainful employment and (3) no criminal record. In *Cook v. State*, Tex.Cr.App., 497 S.W.2d 295, we held that the averments that the informant was (1) gainfully employed; (2) well thought of by people in the community and (3) had no criminal record with this department (Austin) or the Department of Public Safety was sufficient. In *Carvajal v. State*, Tex.

Cr.App., 529 S.W.2d 517, the averments that the informant (1) lacked any criminal record, and (2) enjoyed a good reputation among his associates and in the community was deemed adequate under prior decisions. We noted that while the affidavit stated fewer "underlying circumstances" than did the affidavit upheld in *Cook, Wetherby,* and *Yantis,* supra, that it was "substantially identical" to the affidavit upheld in *Adair,* supra.

In *Calderera v. State,* Tex.Cr.App., 504 S.W.2d 914, the averment that the informant did not have a record with the Austin Police Department was held to be insufficient. We held in *Yantis, Adair, Wetherby,* and *Cook,* the affidavit in each case was found sufficient "to meet the second requirement of *Aguilar* but each opinion indicated that the affidavit considered met only the *minimal requirement.*" at 916 (emphasis added.)

Finally, in *Avery v. State,* Tex.Cr.App., 545 S.W.2d 803, we held that:

> "If the informant is unnamed, *the minimal requirement is* that the affidavit recite that the informant has no criminal record, and enjoys a good reputation among his associates and in the community." (Emphasis added.)

Clearly, in the case at bar, the underlying circumstances averred, that "the citizen has owned his own business for several years in Dallas County" and has "not been arrested, charged with, or convicted of a violation of the law in Dallas County" fails to meet the *minimal* standard promulgated by this Court in the aforementioned cases discussing *Aguilar's* second prong. We refuse to retreat from this reasonable minimal standard. We note that the averment concerning the informant's criminal record is limited or confined to the Dallas County area. Without deciding whether or not an averment such as this, when limited to only a single county or city, is adequate to truly reflect an informant's criminal record, see and compare *Adair,* supra, *Yantis,* supra,

*Carvajal,* supra, *Avery,* supra, with *Calderera,* supra, *Wetherby,* supra, and *Cook,* supra, the absence of any averment pertaining to the reputation of the unnamed informant is fatal. While we realize that affidavits "must be interpreted in a common sense and realistic fashion . . . nonetheless, in our efforts to avoid technical and strict interpretation, we must be ever mindful that we stay within the boundaries of constitutional requirements." *Avery v. State,* supra, at 805, quoting from *Ashmore v. State,* Tex.Cr.App., 507 S.W.2d 221, 223. For this reason, we conclude that the reliability and credibility of the citizen informant was not established as is required by *Aguilar v. Texas,* supra.

The affidavit, however, does contain other underlying circumstances which can be looked to for corroboration of the information from the citizen informant and which establishes that the telephones were on the premises searched:

(1) The affiant personally contacted Southwestern Bell and was informed that the telephone number 231–9061 was still registered in the name of J. Etchieson;

(2) Sgt. Duncan, a named informant, personally told the affiant that he had arrested Etchieson at his residence, approximately a year before, and that the telephone number registered at the house was 231–9061. His information established as well that the address of the Etchieson residence was the same as that alleged to be the appellant's herein;

(3) Officer J. L. Chandler, a named informant, personally told affiant on the day that the search warrant affidavit was presented to the magistrate that he had arrested two women who offered to fill dates of prostitution and that the two women met with the two police officers at a Dallas motel in response to a telephone call to "Syn" at 231–9061.

This information provided by the affiant and two named informants [2] constitutes ad-

2. "If the informant is named, the affidavit satisfies *Aguilar* when it also contains the information given by him, and such information is sufficiently detailed so as to suggest direct knowledge on his part." *Avery v. State,* 545 S.W.2d 803, 804. See also *Lopez v. State,* Tex.Cr.App., 535 S.W.2d 643, 648; *Woods v. State,* Tex.Cr.App., 533 S.W.2d 16; *Frazier v. State,* Tex.Cr.App., 480 S.W.2d 375.

equate and independent corroboration to remedy the deficiency of the second prong of *Aguilar* in regard to the citizen informant. See *Stoddard v. State*, supra, and *Spinelli v. United States*, supra.

### Telephone Recording Equipment

██ We likewise find that the affidavit in the present case contains sufficient information to support the magistrate's finding of probable cause to search for the telephone recording equipment.

When the citizen informant called 231–9061, he was instructed by a recorded message to leave his name and number and that he would receive a return call. We deem this to constitute sufficient underlying circumstances from which a magistrate could conclude that the telephone recording equipment was on the premises to be searched. This information, coupled with the information discussed under the heading *Telephones*, relative to the first prong of *Aguilar*, places the telephone recording equipment on the premises searched.

Again, for the reasons stated in our discussion under the heading *Telephones*, the information going to the citizen informant's reliability and credibility is insufficient. But as we found with the telephones, we believe the affidavit contains facts that independently corroborate the citizen's information regarding the existence of the telephone recording equipment.

In the case at bar, the averment that Officer Chandler had arrested two women who had arrived at a Dallas motel to fill dates of prostitution in response to a telephone call to "Syn" at 231–9061 demonstrates for probable cause purposes that "Syn" was engaged in criminal activity.

In *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), a case involving probable cause to arrest, the Supreme Court held in regard to corroboration of an informant's tip by an arresting officer:

" . . . the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or . . . were in the process of committing a felony."

In *Weeks v. Estelle*, 509 F.2d 760, 764 (5th Cir. 1975), the court held:

"*Whiteley* (supra) emphasized that where the government seeks to corroborate an otherwise insufficient informer's tip on the basis of an independent police investigation, it has to show that information acquired through the investigation tends to indicate that the defendant is in the process of committing, or has previously committed, a crime."

And in *United States v. Craemer*, 555 F.2d 594, 597 (6th Cir. 1977) the court stated that "the officer's corroboration must go to the essence of the tip, that the suspect is engaged in a criminal undertaking." See also *United States v. Jackson*, 533 F.2d 314, 318 (6th Cir. 1976).

As was held in *United States v. Squella-Avendano*, 447 F.2d 575, 582 (5th Cir. 1971), cert. den. 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971), "If sufficient corroborative evidence can be collected to support a clear inference that the informer was generally trustworthy then *Aguilar's* second requirement is met." We hold that the affiant's averment regarding the information personally given to him by Chandler supports the inference that the citizen informant was generally trustworthy.

### Trick Lists

██ The only information in the instant affidavit which arguably showed that the "trick lists" were "probably where they (were) alleged to be," *Frazier v. State*, Tex. Cr.App., 480 S.W.2d 375, is the averment that while the citizen informant was speaking with "Syn" on the telephone, she asked him if he knew a Willie Cates and "it appeared to the citizen that 'Syn' was reading the name from some type of list." We

express grave doubt that this meager information which is conclusory in nature, satisfies *Aguilar's* first prong. See *Hicks v. State*, Tex.Cr.App., 545 S.W.2d 805, 808. However, the fact that the trick lists may have been a product of an unlawful search and seizure will not require reversal if their admission was harmless error beyond a reasonable doubt. See *Bridger v. State*, Tex. Cr.App., 503 S.W.2d 801 and cases cited therein. "To determine whether the admission of the unlawfully obtained evidence was harmless error beyond a reasonable doubt we must consider the other evidence in the record." *Bridger*, supra, at 804.

The facts adduced at trial established that Sgt. Fowler, a member of the Dallas Police Department vice squad, was familiar with the telephone number 231–9061 and had several conversations with "Syn" on previous occasions. He testified that "on one prior occasion she was referring to herself as Syn. I said, That's a pretty name. Is that your real name? She said, My name is Pam Wood, but I go by Syn." Fowler identified the appellant in court as being the person who went by the name of "Syn." On November 12, 1975, Fowler met with the citizen informant at his place of business and was told of the past attempts made by a person named "Syn" to set up dates of prostitution with the informant. Fowler was present when the informant called "Syn" on November 12, 1975, pursuant to Fowler's instruction and arranged a date of prostitution for the next day. On the next day, Fowler called "Syn" at the aforementioned telephone number for the purpose of having prostitutes sent to the motel. When the telephone call was placed, a telephone recording instructed Fowler to leave his name and number and stated that his call would be returned. Fowler identified himself as Ralph Sawyer, the name of the citizen informant, and said that he was at the Travelodge on Ft. Worth Avenue in Dallas. Fowler testified that the voice of the telephone recording was that of "Syn."

Five minutes later the telephone call was returned and Fowler recognized the voice of the caller as being that of "Syn." The following conversation transpired:

"She says (appellant)—when I answered the phone I said, 'Hello,' and she said 'Ralph,' and I said, 'Yes,' and she says 'Are we going to get it on today, baby,' and I said 'We're out here,' and she said, 'We?' I said, 'Yes, I have the man that works with me.' She wanted to know what kind of girls we wanted, and we told her. She said she didn't have that kind, but she would send two others. She quoted a price of thirty-five dollars per man or one hundred dollars per man for an hour to an hour and a half stay."

Asked on direct examination the following question: " . . . had you during your conversation with Pamela Lou Wood, discussed the arrangements for two women to come to room 101 at the Travelodge here in Dallas?", the witness replied: "Yes, I did. I did make that arrangement."

About one hour later, two women arrived at the motel. Two vice squad officers posed as "tricks" in room 101, while other vice squad officers were stationed in an adjoining room. All of the conversations between the two women and vice squad officers in room 101 were recorded as were the telephone calls between Sgt. Fowler and "Syn" immediately before the women's arrival. These taped conversations were introduced at trial.

Officer Chandler, one of the vice squad officers who posed as a "trick," testified that each woman was paid one hundred dollars and that one of the women stated "Give us our money and let us take our clothes off." Chandler further testified that Officer Winterbauer, the other vice squad officer, "made the statement, 'What are we going to get for this,' and both girls sort of laughed and they said, "Well, we're going to give you a good time." Officer Winterbauer said, "Are we going to get a head job." Both girls replied, "Sure." After a pre-arranged signal was given, vice squad officers in the adjoining motel room entered room 101 and arrested the two women for prostitution.

At the trial, the State offered evidence that thirteen telephones were seized during

the search and introduced the call master (telephone recording equipment) and a tape recorder with cassette tapes that were attached to one of the telephones seized.

■ The foregoing evidence convinces us beyond a reasonable doubt that the introduction of the tainted evidence, i. e., the trick lists, was harmless constitutional error. The appellant offered no defensive theory, thus the admission of the unlawfully seized lists "did not impinge upon a defense." *Bridger v. State*, supra. See also *Hampton v. State*, Tex.Cr.App., 511 S.W.2d 1. This determination that the error is harmless beyond a reasonable doubt is based on our independent examination of all of the admissible evidence. *Vasquez v. State*, Tex.Cr.App., 532 S.W.2d 338.

■ The appellant contends in her last argument pertaining to the search that the warrant was an invalid blanket warrant and that the officers engaged in an exploratory search to such an extent that a general search resulted. With these contentions we disagree. The implement search warrant specifically limited the search of appellant's residence to three classes of evidence. At trial, only those items specifically named in the warrant were introduced. While it is true that records of an escort and dating service were seized at the time the search warrant was executed, the trial court suppressed the introduction of these records. Furthermore, the search warrant in question does not fall within the same class as that condemned in *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), where the search warrant was so general in its scope that it impinged on constitutionally protected First Amendment freedoms. The appellant's ground of error is overruled.

■ Finally, appellant argues that V.T.C.A., Penal Code Sec. 43.04 is unconstitutionally vague and overbroad. In *Morgan v. State*, Tex.Cr.App., 557 S.W.2d 512, 514, we stated:

"The standard for determining whether a statute is void for vagueness is whether, 'It fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.'" quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

We further stated:

"A statute will not be struck down as unconstitutional merely because its words or phrases are not specifically defined." at 514. See *Powell v. State*, 538 S.W.2d 617; cert. den. 429 U.S. 928, 97 S.Ct. 334, 50 L.Ed.2d 298 (1976).

The statute in question uses words of common parlance and when construed in conjunction with Sec. 43.02, supra, Prostitution, any vagueness "vanishes in the face of the total context," *Morgan v. State*, supra. Appellant's ground of error is overruled.

The judgment is affirmed.

ROBERTS, J., dissents.