Dalton B. STEWART, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–99–130 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Dec. 9, 1999.

Decided Jan. 26, 2000.

---

Michael A. Maness, Houston, for appellant.

Michael A. McDougal, Dist. Atty., Marc Brumberg, Asst. Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., BURGESS, and STOVER, JJ.

## OPINION

DON BURGESS, Justice.

Following a trial to the bench, Dalton B. Stewart was convicted of theft and sentenced by the trial court to two years in a state jail facility. The sentence was suspended and community supervision was granted for a period of five years, confinement in the Montgomery County Jail for a period of ten days was imposed as a condition of community supervision, a $1,000 fine was assessed, and Stewart was ordered to perform 400 hours of community service. Stewart appeals raising three issues.

Stewart blackmailed the complainant, his ex-wife, by calling her at her residence in Montgomery County and threatening to distribute nude pictures of her taken during their marriage. Stewart told the complainant to send him $5,000 or he would distribute the pictures to all the churches in her area and all the surrounding businesses. Stewart gave the complainant a deadline, but before it arrived, she received a letter from Stewart at her home, in Montgomery County. Inside the envelope was a flier with the name and address of the hair salon she and her second husband owned. In the middle of the page was one of the pictures. An accompanying letter threatened a mass mailing of the flier to the Conroe business and church community unless the complainant complied with Stewart's demands within seven days.

The complainant contacted Detective Gene De Forrest of the Conroe Police Department, with whom she had spoken after the initial threat was made, and took him the envelope and its contents. The complainant was put in contact with Inspector Bruce Beckham of the United States Postal Service. The complainant submitted $1,600 to the postal inspector to be delivered to Stewart through United States Express Mail. This occurred in Montgomery County. The money was delivered to Stewart at his residence in Harris County. Stewart was then arrested with the money in his possession.

In his first issue, Stewart claims the State failed to establish venue in Montgomery County. The specific venue statute for theft provides, "Where property is stolen in one county and removed by the offender to another county, the offender may be prosecuted either in the county where he took the property or in any other county through or into which he may have removed the same." Tex.Code Crim. Proc. Ann. art. 13.08 (Vernon 1977). The Court of Criminal Appeals has concluded article 13.08 "applies to all of the offenders who are prosecuted under the consolidated theft statute." *Jones v. State*, 979 S.W.2d 652, 657 (Tex.Crim.App.1998). The *Jones* Court further determined that where article 13.08 applies, the general venue statute (article 13.18) does not. *Id.* at 658.

Jones was charged with receiving stolen property. The Court of Criminal Appeals found venue lay only in Burleson county (where the property was received), not in Brazos County (where it was taken), because Jones "assumed control of the property at his home in Burleson County." *Id.* at 657. The Court concluded that venue for the offense never attached in Brazos County because the State never showed Jones received the property in Brazos

County or removed the property to Brazos County. *Id.* at 658. Accordingly, the Court of Criminal Appeals reversed Jones' conviction and ordered his acquittal. *Id.* at 659.

Stewart also was charged under the consolidated theft statute. Thus, according to *Jones,* we determine if venue was proper in Montgomery County pursuant to article 13.08, and not article 13.18.

The State alleged in its indictment that Stewart unlawfully appropriated money. Thus, the State had to prove the money was appropriated in Montgomery County or that the money was appropriated elsewhere and later taken to or through Montgomery County. *See Weaver v. State,* 722 S.W.2d 143, 146 (Tex.App.—Houston [1st Dist.] 1986, no pet.) (citing article 13.08). Stewart, along with the money, was taken into custody in Harris County shortly after he received the money. Thus there is no evidence the money was "later taken to or through" Montgomery County. *Id.* To show the money was appropriated there, the record must demonstrate Stewart acquired or otherwise exercised control over the currency in Montgomery County. *See* TEX. PEN. CODE ANN. § 31.01(4)(B) (Vernon Supp.2000).

An analogous situation arose in *Weaver v. State,* 722 S.W.2d at 146. In *Weaver,* the complainant Simpson [1] responded to an advertisement by American Energy Systems (AES) concerning making window panes. *Id.* at 145. Simpson met with Weaver in Harris County. Weaver told Simpson he could earn five dollars for each window he made for AES. Simpson signed a contract agreeing to pay $5,000 for a security deposit and Weaver orally assured Simpson the deposit would be returned plus interest. Simpson gave Weaver a check for $5,000 at Simpson's home in Galveston County. The check was deposited in a bank in Harris County. The check was returned by Simpson's bank, in Galveston County, for insufficient funds,

and the check was ultimately collected when an unidentified representative of AES personally presented it to Simpson's bank in Galveston County. The court concluded the evidence showed Simpson's insufficient check moved through Harris County, but there was "no evidence that Simpson's money was stolen or located in Harris County, as alleged in the indictment." *Id.* at 145. Thus, although Weaver induced Simpson to pay the $5,000 in Harris County, the court found the money was not "stolen" in Harris County. Hence, venue was not proper.

The court further found there was "no evidence that the money acquired by cashing Simpson's check was ever taken to or through Harris County." *Id.* at 146. The court concluded the State "failed to prove what it alleged, theft of Simpson's money in Harris County." *Id.* Weaver's conviction was upheld, however, because the court found the proof on the other counts supported the conviction for a second degree felony offense. *Id.*

To the contrary is *Salazar v. State,* 711 S.W.2d 720 (Tex.App.—Corpus Christi 1986, pet. ref'd). There, Salazar called a manufacturer and placed an order for merchandise to be delivered. *Id.* at 722. The manufacturer required payment prior to shipping so Salazar sent several checks. *Id.* Upon receipt of each check, the manufacturer made a shipment. *Id.* Several of the checks were dishonored, and subsequently theft charges were brought against Salazar. *Id.* The court found Salazar "exercised control" over the goods "insofar as he induced the victim to ship them." *Id.* at 723. Citing article 13.01, the court found venue proper because "an element" of the offense was committed in Cameron County.

*Ellis v. State,* 714 S.W.2d 465 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd), agreed with *Salazar* that theft can occur when a victim is induced to ship goods that he would not have otherwise shipped." *Id.*

---

1. There were two complainants.

at 474. However, venue was not an issue in *Ellis,* which involved theft based on falsification of credit records of various individuals, so that lenders made loans they would not have made had they received true credit information. Ellis contended that because the lenders did not repudiate the loans upon learning the true credit information, there was no proof of the lack of the owners' effective consent. *Id.* at 474. In *Ellis,* theft occurred because consent was lacking when the lenders were induced to loan the money.

In the present case, as in *Weaver,* the inducement occurred in Montgomery County but the defendant did not obtain the money in that county. Because *Weaver* was determined under the correct venue statute, we find it more persuasive. We disagree with *Salazar* and *Ellis* that control can be exercised over property that is not in the possession, whether it be actual or "possessory," of the defendant.

The State cites *Geter v. State,* 795 S.W.2d 208, 208–09 (Tex.App.—Tyler 1987), *vacated,* 779 S.W.2d 403 (Tex.Crim. App.1989),[2] in arguing that an element of the offense, lack of effective consent, occurred in Montgomery County. As we have already discussed above, that is the incorrect standard. However, we will address *Geter* insofar as it discusses the exercise of control.

Geter contended she never actually possessed currency, or even a check representing currency, and thus she could not be guilty of acquiring or exercising control over the currency. *Id.* Geter did not contest venue. The issue before the court was whether the transfer of funds from the AAMCO account to Geter's account by means of withdrawal and deposit slips constituted an exercise of control over the currency. *Id.* at 209–10. The court noted that exercising control does not require

possession and found that by ordering the withdrawal of all funds from the account, and by using that money to purchase a certificate of deposit, Geter effectively exercised control over the currency. *Id.* at 210. The court used as an example a shipping clerk who re-routes a package to a friend by changing the address label. The court said that although the clerk did not have possession, his conduct constituted an exercise of control over the package. *Id.*

In the instant case, Stewart never had possession of the currency in Montgomery County. There is no evidence Stewart exercised control over any instrument which representing the currency or redirected any package containing the currency. The only action of Stewart occurring in Montgomery County was inducing the complainant, through blackmail, to send the currency. Thus the present case is akin to *Weaver,* where venue was found not to lie in the county where only the inducement occurred, and is dissimilar to *Geter.*

Like Geter, in *Bailey v. State,* 885 S.W.2d 193 (Tex.App.—Dallas 1994, pet. ref'd), Bailey contested the sufficiency of the evidence to establish he appropriated property as alleged in the indictment. *Id.* at 198. Bailey argued appropriation was not shown because the transfer of funds from the Dallas bank to the Houston bank was accomplished by means of a wire transfer. *Id.* at 199. According to Bailey, such a transfer does not contemplate any actual possession by either the sending or receiving party, and therefore does not constitute a "possessory" appropriation. *Id.* The court noted that under *Coats,* an electronic bank transfer does not involve physical possession of cash money, but is "a so-called 'possessory' appropriation." *Id.* (citing *Coats v. State,* 712 S.W.2d 520,

---

**2.** In *Geter v. State,* 779 S.W.2d 403, 404 (Tex. Crim.App.1989), the Court of Criminal Appeals addressed the issue of whether the trial court erred in denying Geter's motion to quash the indictment for failure to more spe-

cifically allege "without effective consent." The Court found the motion to quash should have been granted and vacated the judgment of the court of appeals. *Id.* at 407.

522 (Tex.Crim.App.1986)). The court held "that intangible property such as a bank balance can be appropriated by the exercise of control over that property." *Id.* The court found that Bailey orchestrated a wire transfer from the Dallas account to the Houston account. *Id.* Therefore, the record established Bailey was able to control the transfer of funds from the Dallas account. *Id.*

Regarding venue, Bailey contended the evidence established an appropriation in Harris County, rather than Dallas County, because the wire transfer was completed in Harris County. *Id.* at 200. Bailey relied on *Coats* for the proposition that a theft by wire transfer is completed only upon the crediting of an accused's account. *Id.* (citing *Coats,* 712 S.W.2d at 523.) The Dallas Court found Bailey's reliance misplaced upon the basis that Bailey was a fiduciary with respect to the funds in the Dallas account. *Id.* Because Bailey manifested an intent to permanently deprive Summa of its funds while those funds were in the Dallas account, his exercise of control over the funds was unauthorized at its inception. *Id.* Accordingly, venue in Dallas County was proper. *Id.*

Unlike Bailey, Stewart was never a fiduciary of the currency in question and did not transfer the funds. *Bailey* is inapposite to the present case because Stewart had no control over the money until it was delivered to him.

The State cites *Wood v. State,* 573 S.W.2d 207 (Tex.Crim.App.1978), for the proposition that where the offense is committed in more than one county, venue exists in any county in which the offender engaged in the unlawful appropriation of the property. Wood was charged with the aggravated promotion of prostitution and the court found some of the elements occurred in Denton County, while at least one of the elements occurred in Dallas County. Accordingly, the court found ven-

ue was proper either in Dallas County or Denton County. *Id.* at 210–11. The court in *Wood,* however, was applying article 13.18 and specifically noted that "No other special venue provision in chapter 13 governs the instant case." *Id.* at 210. Clearly, that is not the case before this court.

We do not disagree with the authority cited by the State which finding an unlawful or harassing telephone communication is made or committed in the county in which the communication is received as well as the community from which it is sent. *See Haigood v. State,* 814 S.W.2d 262, 263 (Tex.App.—Austin 1991, pet. ref'd); *Ware v. State,* 697 S.W.2d 70 (Tex. App.—Eastland 1985), *rev'd,* 736 S.W.2d 700 (Tex.Crim.App.1987);[3] and *Salisbury v. State,* 867 S.W.2d 894 (Tex.App.—Houston [14th Dist.] 1993, no pet.). But these cases are clearly distinguishable. The *Haigood* court was considering venue under article 13.18 while we are constrained by *Jones,* 979 S.W.2d at 657, to consider it only under article 13.08. *Haigood,* 814 S.W.2d at 263. The *Haigood* court decided the unlawful telephone communications were made or committed in the county in which they were received but expressly did not decide whether the unlawful calls were made or committed in the county from which the communication was sent, if the defendant was in another county when he placed the calls. *Id.*

*Ware* also decided venue under article 13.18. *Ware,* 697 S.W.2d at 73 n. 6. In that case, the court determined venue was proper in the county where the threatening telephone call was received as well as in the county where the call originated; thus venue would be proper in either county. *Id.* Likewise, *Salisbury* involved harassing telephone calls and the court found venue may lie in any county where communication was initiated as well as any county where the communication was received.

**3.** The Court of Criminal Appeals reversed the decision of the Court of Appeals on the basis that "law of the case" doctrine precluded relitigation of the validity of the affidavit and arrest warrant. *Ware v. State,* 736 S.W.2d 700 (Tex.Crim.App.1987).

*Salisbury,* 867 S.W.2d at 898 (citing *Haigood,* 814 S.W.2d at 262.).

All three of these cases involve unlawful telephone communications, not theft. Thus, all three consider the issue of venue under article 13.18 rather than article 13.08. Accordingly, this authority is inapposite to the issue currently under consideration.

The only action taken by Stewart in Montgomery County was the inducement of the transfer of the currency. In Montgomery County, Stewart did not conduct or direct the transfer of the money, or any instrument representing the money, and did not re-direct any packages containing the money. Accordingly, we find he did not exercise control over the currency in Montgomery County. Stewart's first issue is sustained.

Because our determination of Stewart's first issue is dispositive of his appeal, we do not address the remaining points. Stewart's conviction is reversed, and a judgment of acquittal rendered. *See Jones,* 979 S.W.2d at 659.

REVERSED AND RENDERED.

