**Affirmed and Opinion Filed August 13, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00659-CR

**ANASTASIA MIKAL SOLANO, Appellant**

V.

**THE STATE OF TEXAS, Appellee**

On Appeal from the County Court at Law No. 1
Grayson County, Texas
Trial Court Cause No. 2010-1-0242

## MEMORANDUM OPINION

Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice Francis

Anastasia Mikal Solano appeals her conviction for making a false statement material to a criminal investigation to a peace officer. After the jury found her guilty, the trial court assessed punishment at thirty days in jail, probated for twelve months, and a $500 fine. In three issues, appellant claims the evidence is legally insufficient to support her conviction for making a false statement that she had been sexually assaulted, venue was not proper in Grayson County, and the trial court's refusal to admit certain documents prevented her from presenting a defense.

In her first issue, appellant contends the evidence is legally insufficient to support her conviction. In reviewing a challenge to the legal sufficiency of the evidence, we examine the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (1979). The factfinder exclusively determines the weight and credibility of the evidence. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard is the same for both direct and circumstantial evidence. *Id*. We do not engage in a second evaluation of the weight and credibility of the evidence but ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). Our duty is to ensure the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

A person commits an offense if, with intent to deceive, she knowingly makes a false statement that is material to a criminal investigation and makes the statement to a police officer. TEX. PENAL CODE ANN. § 37.08(a)(1) (West Supp. 2012). The information provided appellant

> did then and there, with intent to deceive, knowingly make to Detective Cox, a peace officer conducting a criminal investigation, a false statement, to-wit: the defendant had been sexually assaulted, and the statement was material to a criminal investigation in that it formed the basis of a criminal investigation.

At trial, Sherman police officer John Phares said he responded to a burglary call made by appellant's boyfriend, James Crawford, around midnight on November 13, 2009. When Phares arrived at the apartment complex at 415 Archer Drive in Sherman, he first spoke with Crawford, who was intoxicated. According to Crawford, a black man known as "Pork Chop" had taken his laptop, and appellant was "missing." Pork Chop's real name is Dedrick Polk. Initially, Phares had difficulty understanding Crawford so he spoke with a neighbor who said she saw appellant and Polk leaving the apartment together, laughing and talking. Phares returned to speak with Crawford who gave the officer three different versions of what happened that night. In two of the versions, Polk drove Crawford and appellant to a friend's apartment so the friend could use Crawford's laptop. Phares asked Crawford if he could remember where the apartment was, and

Crawford took him there. Phares knocked on the door, and a white male answered. When asked about Polk, the man said he had not seen Polk in about an hour. Phares asked if he could check the apartment and began looking around. Polk walked out of a closet, naked. Appellant then walked out of the closet, fully clothed. She appeared "calm and collected."

Phares asked appellant to walk outside the apartment with him. Appellant was not crying or shaking, nor did she appear upset. Once they were outside and away from Polk, Phares asked her what was going on. She told the officer she and Crawford met Polk earlier in the day to get some Lortabs. Polk showed up at their apartment that evening. He had some Xanax and split it with her. They crushed the tablets and snorted them. Polk asked if a friend could use Crawford's laptop in exchange for the Lortabs they wanted. The three walked to Crawford's car, and Polk drove them to apartment 939. While they were waiting, Crawford got scared of Polk and ran to the bathroom to hide. Appellant walked back to her apartment. Shortly thereafter, she heard a knock on the door. Polk was there, saying they needed to hurry because his friend really needed the computer. She left with Polk and drove to a third apartment. When Polk tried to leave with the computer, appellant said she had to go with him. Polk told her she could not go inside that apartment.

In light of this, appellant told Polk to take her home, and he agreed. As they approached appellant's apartment, they saw the police. Polk said the police were looking for him and he had to turn around. They returned to apartment 939 where they hid in the closet. According to appellant, they smoked a "mystery white substance," and Polk took his clothes off and asked her to rub his back. When the police arrived, they walked out of the closet. Phares asked appellant several times in "about every way [he] knew how to ask" if she had been threatened or assaulted; she told him "no each and every time." Throughout the time she talked with Phares, she did not

3

appear nervous or upset. Because there was nothing to indicate an assault or any other crime, he took her to Crawford.

The following day, Detective Jeremy Cox of the Sherman Police Department was told the hospital in McKinney called about a female who wanted to report she had been sexually assaulted in Sherman. Cox returned the call and, after speaking with the ER nurse, found out the female was appellant. After asking to speak with her, Cox asked if she wanted to make a sexual assault report. Appellant said she did, but not at that time; she wanted to wait until the following week. Cox said that was fine and hung up. About an hour later, Cox received a second call from the ER nurse who said appellant wanted to talk to Cox and "make that report now."

Cox told the nurse that appellant had to go to the Medical Center of Plano for a sexual assault exam. Cox met appellant and her boyfriend at the hospital and, while they waited for the SANE nurse, Cox asked her what happened.

Appellant told a story similar to the one she told Phares, but with more details. Specifically, appellant said that when she and Polk went to apartment 939 for the second time, he first told her to go into the bathroom. He then told her to get in the closet, and he followed her in. Polk took off his shirt and asked her to massage his "bullet wounds." He then pulled out a metal pipe, put something in it, and told her to smoke it which she did. He asked if she had ever had sex with a black man, and when she replied she had not, he told her she was "going to tonight." When he leaned in and kissed her forcefully, she got up and ran out of the closet. Polk grabbed her by the arm and pulled her back in. He "kept loading bowl after bowl of this stuff" which they smoked, then told her to take her clothes off which she did. When he told her to lie on her back, she told him she was not going to do this and did not want to do this. Nevertheless, he took a plastic bag, "[l]ike a Wal-Mart bag," wrapped it around his penis, and penetrated her.

4

The SANE nurse arrived, and Cox left. After the SANE examination was complete, Cox returned and finished the interview. Appellant told Cox there was no physical violence but that Polk took advantage of the mental state he put her in. She said "everything was a little bit fuzzy." Cox asked if this was "just a bad judgment call" and not a sexual assault, she replied, "Maybe. I don't know. Yeah. I don't know. Honestly…." Cox stepped out to take a phone call and when he returned, he asked appellant if she had gotten high, had sex with Polk, and was now scared and embarrassed about it. She replied, "Yeah. That's right." When Cox told her not to "just agree" with him or "humor" him, she replied, "I consented to have sex with him and I did." They talked a few minutes more, and she said, "Yes. Just for the record, I consented to have sex with him and I did. Ok."

Polk testified he saw appellant and Crawford at their car and asked if they were interested in any pills. The three went upstairs to Crawford's apartment where they crushed and snorted Xanax pills. They hung out for several hours until the pills were all gone. Polk left to see if he could "come up with some more money" for more pills, but he returned without any. Crawford and appellant said they had a laptop they could put up as collateral so Polk called his friend who told him to bring the laptop over. Appellant and Polk left with the laptop. Before they did, Polk told Crawford to meet them at apartment 939.

Appellant and Polk went to a location on a nearby street and exchanged the laptop for some drugs. They then drove to apartment 939, across the street from Crawford's apartment, where Polk's friend, Mike, lived. Appellant was initially using Xanax while Polk had crack cocaine, but when she asked to try the cocaine, Polk passed her the pipe. He said she became paranoid after smoking it and did not want to be around Mike so Polk suggested they get in the closet. According to Polk, once they got in the closet, appellant told him she was "horny." She

took her clothes off, and they had sex. Polk said appellant did not try to leave the closet and did not tell him she did not want to have sex. He said they did not use protection and specifically denied using a Wal-Mart bag.

Appellant testified at length about that night. Although she denied having voluntary sex with Polk and making a false statement to Cox, the jury, as factfinder, was free to believe or disbelieve all or part of appellant's testimony. *See Coleman v. State*, 145 S.W.3d 649, 655 (Tex. Crim. App. 2004). After reviewing the entire record, we conclude the evidence is legally sufficient to support appellant's conviction for making a false statement material to a criminal investigation to a peace officer. We overrule appellant's first issue.

In her second issue, appellant claims venue was not proven by a preponderance of the evidence. Specifically, appellant argues the evidence shows she was in Collin County at the time she gave her statement about a possible sexual assault and, therefore, venue was proper in Collin County, not Grayson County. We do not agree.

When there is not a special venue statute applicable to the charged offense, the proper venue for the prosecution is the county in which the offense was committed. TEX. CODE CRIM. PROC. ANN. art. 13.18 (West 2005). When an offense is committed in two counties, venue is proper in any county where a portion of the offense occurred. *Woods v. State*, 573 S.W.2d 207, 210–11 (Tex. Crim. App. [Panel Op.] 1978). The burden of proof is on the State to establish venue by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 13.17. Failure to prove venue as set forth in the charging instrument may result in reversible error. *Black v. State*, 645 S.W.2d 789, 791 (Tex. Crim. App. 1983).

Appellant was charged with making a false report to a police officer. The elements of the offense are (1) a person (2) with intent to deceive, (3) knowingly makes a false statement (4) that

is material to a criminal investigation (5) to a peace officer. The record shows the purported sexual assault happened in Grayson County. That night, the Sherman police responded to a burglary call and spoke with appellant who denied she had been threatened or assaulted. The following day, appellant went to the hospital in McKinney. While there, she had a telephone conversation with Cox who was in Grayson County and told him she wanted to make a report of a sexual assault that had occurred the night before in Sherman. As a result of this call, Cox went to the Medical Center of Plano and interviewed appellant before and after her SANE exam. The record shows the alleged sexual assault occurred in Grayson County and, although appellant was in Collin County at the time she spoke with Cox on the phone about the sexual assault, he was in Grayson County. Under these facts and circumstances, we conclude the State established by a preponderance of the evidence that venue was proper in Grayson County. *See Hall v. State*, 124 S.W.3d 246, 251 (Tex. App.—San Antonio 2003, pet. ref'd); *Schier v. State*, 60 S.W.3d 340, 345 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). We overrule appellant's second issue.

In her final issue, appellant claims the trial court erred by excluding appellant's records about posttraumatic stress disorder and, as a result, she was unable to present a defense.

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). A trial court abuses its discretion when it acts outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g).

During a hearing outside the jury's presence, the prosecutor asked for a motion in limine on evidence offered by appellant concerning "any type of aftereffects . . . any type of posttraumatic stress syndromes," including treatment appellant received at the Behavioral Health Center. Appellant intended to introduce the records through Dr. Borck; however, the doctor was

7

not available for trial. Stating "this is really the subject of some type of expertise in the diagnosis," the trial court concluded that admitting "the records without an explanation, an expert explanation" was too subjective and would "contribute to confusion on behalf of the jury." Although appellant now assigns this ruling as error, we cannot agree. The trial court found the evidence was more likely to confuse or mislead the jury if presented without an expert explanation and appellant had no expert who could testify about the records at trial. Under these circumstances, we cannot conclude the trial court abused its discretion by excluding the records.

Furthermore, even assuming the trial court erred, we would nevertheless conclude appellant was not harmed. *See* TEX. R. APP. P. 44.2(b). Appellant and her mother both testified appellant was traumatized after the event, was admitted to the Behavioral Health Center for four days of treatment, and had outpatient treatment thereafter. Thus, although her medical records were not admitted, the jury heard evidence of appellant's mental health after the events of that night and the interview with Cox. We overrule appellant's final issue.

We affirm the trial court's judgment.

/Molly Francis/

Do Not Publish                MOLLY FRANCIS
TEX. R. APP. P. 47            JUSTICE
120659F.U05

8



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANASTASIA MIKAL SOLANO, Appellant

No. 05-12-00659-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 1, Grayson County, Texas
Trial Court Cause No. 2010-1-0242.
Opinion delivered by Justice Francis,
Justices FitzGerald and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 13th day of August, 2013.


/Molly Francis/

MOLLY FRANCIS
JUSTICE