Winford Anthony WEEKS,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 74–2134.

United States Court of Appeals,
Fifth Circuit.

March 17, 1975.

Rehearing Denied April 28, 1975.

Michael A. Maness, Richard Stephanow (Court appointed), Houston, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Larry F. York, Lonny F. Zwiener, Calvin Botley, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, COLEMAN and ROSENN *, Circuit Judges.

* Of the Third Circuit, sitting by designation.

COLEMAN, Circuit Judge.

In this appeal from the denial of federal habeas corpus relief to a Texas state prisoner, convicted of the possession of heroin, we are asked to review events which occurred almost ten years ago.

On June 6, 1965, Winford Anthony Weeks, the appellant herein, and William James Cooper were arrested outside of Port Lavaca, Texas, and afterwards charged with the possession of heroin. Immediately following the arrest, Weeks' pickup truck was searched at the Calhoun County jail and heroin was discovered in the truck heater hose. Failing in a motion to suppress evidence, Weeks was tried to the Judge of the Twenty-fourth Judicial Circuit of Texas, found guilty of unlawful possession of heroin, and sentenced to ten years imprisonment. His conviction was upheld on appeal to the Texas Court of Criminal Appeals,[1] and, at a later date, his petition for a writ of habeas corpus was denied in the state courts. Having exhausted his state remedies, Weeks applied to the United States District Court for the Southern District of Texas for habeas corpus relief in April, 1972. After a hearing in the District Court before Judge Seals, the writ was denied.[2]

We affirm the judgment of the District Court.

The constitutional claims raised in Weeks' habeas corpus petition are that he was arrested without probable cause; that subsequent to his arrest his pickup truck was searched in violation of the Fourth Amendment. There was no warrant issued for either the arrest or the search.

1. Weeks v. State, 417 S.W.2d 716 (Tex.Cr. App.), cert. denied, 389 U.S. 996, 88 S.Ct. 500, 19 L.Ed.2d 494 (1967).

2. Weeks v. Estelle, Civil No. 72–H–506 (S.D., Tex., filed March 13, 1974).

3. At the hearing in the District Court, Judge Seals heard testimony from Weeks, in addition to admitting the record of the state court proceedings into evidence. However, Judge Seals did not find Weeks to be a credible witness. To the extent that Weeks' testimony conflicted with the evidence presented in the state court, his testimony was discounted. The reasons given for refusing to accept

The existence of probable cause depends on the evidence heard by the state trial court.[3] The state trial judge recorded no findings of fact but specifically stated, in denying the motion to suppress, that in his opinion probable cause existed for the arrest and that consent had been given for the subsequent search. The Texas Court of Criminal Appeals affirmed on both points.

The actors in the scenario which led to the apprehension of Weeks were a previously reliable informer and two government agents.

At approximately two o'clock on the afternoon of June 6, 1965, William M. Kline, Assistant United States Customs Agent in charge at Laredo, Texas, received a telephone call from Romero Villareal, the Customs Port Investigator at Falcon Heights, Texas. Villareal told Kline that he had received information from a confidential informer, who had proven reliable in the past, that a delivery of heroin would be made that day at a certain place in Alice, Texas, to two unnamed male suspects driving a turquoise and white pickup truck. Upon receipt of this message Kline immediately set out for Alice in an attempt to apprehend the suspects.

At approximately 4:30 p. m., while in Beeville, Texas,[4] Kline received a radio message from his original informant, that he had personally observed a pickup truck in Alice, Texas, matching the description previously given by the informer. Villareal gave Kline the license number of this vehicle and stated further that an agent had seen this truck meet another vehicle. In addition, Villa-

Weeks' credibility were: (1) his demeanor in testifying; (2) conflicts between Weeks' testimony and testimony presented at the state court proceedings; (3) Weeks' record of criminal convictions subsequent to the one at issue in this case. Judge Seals' reasons for doubting Weeks' credibility are supported by the record. The upshot is that the determinative evidence here is the record of the state court proceedings.

4. Kline encountered car trouble on the way to Alice, and was forced to arrange for another agent to transport him to Beeville.

real advised Kline that the informer had by that time reported that the delivery of heroin had been made that afternoon in Alice.

The evidence indicated that the informer was a narcotics delivery man, allowed to enter the United States in order that law enforcement officers could apprehend the parties to whom delivery was made.

Upon receipt of the second communication from Villareal, Kline proceeded to the Sheriff's Office in Beeville, where he requested that a police radio bulletin be broadcast, directing the Texas Department of Public Safety to look out for and apprehend the suspect vehicle. The bulletin contained a description of the truck by color and the license plate number relayed by Villareal to Kline. No name was given for either of the two male suspects, their names being then unknown.

At 6:55 p. m. of the same day, the radio bulletin initiated by Kline was rebroadcast by the Department of Public Safety and received by Deputy James O'Neil, dispatcher for the Calhoun County Sheriff's Department in Port Lavaca, Texas. O'Neil made the following entry in his log book:

"Time, 6:55 p. m., Department of Public Safety signal 1067. Contents of the message: 'Pick up and hold for Narcotics Division a white and turquoise pickup, license number 4K5298 '."

O'Neil personally conveyed the message to Deputies W. L. Warren and Raymond King, who were present in the dispatcher's office at that time, and who then went out on patrol.

A short time after this the Deputies spotted a turquoise and white pickup truck, bearing the license number given in the radio bulletin. It was heading at a high rate of speed on Highway 35 toward Port Lavaca. The officers radioed a message to O'Neil:

"Time, 7:13 p. m., have a pickup ahead of us traveling at a high rate of speed, advise city unit to stand by to intercept."

Warren and King pursued the vehicle and approximately two minutes later overtook it as it pulled into a service station some five miles outside of Port Lavaca. At this point the officers arrested the driver of the truck, William James Cooper, and its passenger, Winford Anthony Weeks, the truck owner. The arrest was undertaken solely on the basis of the radio bulletin previously initiated by Agent Kline, and not on the basis of any speeding violation. King made a cursory inspection of the cab of the pickup truck, in which he found an unloaded shotgun, the stock of which was protruding from under the seat.

After completing a search of the suspects and the preliminary examination of the contents of the truck cab, King and Warren placed the suspects in their patrol car and set out for the Calhoun County Sheriff's Office in downtown Port Lavaca. A deputy who had arrived on the scene at the time of the arrest drove appellant's truck to the Sheriff's Department garage, since the owner of the filling station had asked that it be moved because it was interfering with access to his station.

The officers and suspects arrived at the Sheriff's Office at approximately 7:30 p. m., at which time the suspects were booked, fingerprinted, photographed, charged with possession of heroin and required to change into white jail clothes. Shortly after this they were taken to the adjoining garage where the pickup truck was parked. Chief Deputy Joe Roberts advised Weeks and Cooper that he had reason to believe that there was heroin concealed in the vehicle, and he requested their permission to conduct a search. Weeks and Cooper responded that they knew nothing about any heroin and that Roberts could go ahead and look. The Chief Deputy then searched the vehicle and discovered approximately sixteen grams of heroin concealed in the truck heater hose.

At approximately 9:00 p. m., Agent Kline arrived from Beeville and conduct-

ed a second search in which he discovered an additional quantity of heroin.

Frank C. Kelly, a local Justice of the Peace authorized to issue search warrants, testified that he was on the scene but not until after the first heroin discovery. However, at no time prior to either search was application made for a search warrant. Subsequent to the searches, complaints were filed with Magistrate Kelly. On the following day, June 7, a preliminary hearing was held and the defendants were released on bond.

## I

### Probable Cause

The first issue raised by appellant is that he was arrested without probable cause—the information provided police officers by the informer was insufficient to establish it. Appellant relies on the *Aguilar, Spinelli, Whiteley*[5] trilogy of Supreme Court decisions to assert that the record fails affirmatively to reveal underlying circumstances which would demonstrate that the informer's information was accurate. Further, appellant contends that the informer's lack of first hand knowledge of criminal activity in this case was not cured by independent police activity tending to corroborate the substance of the tip, Draper v. United States,[6] and the record fails to show that this was a situation in which "information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone".[7]

This Court is of course thoroughly aware of the teachings of *Aguilar* and *Spinelli*. Without, in any sense, disregarding the principles there announced, the instant situation seems more clearly to fit within the factual context of *Whiteley, supra*, and of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

In *Whiteley*, upon receiving a tip that defendant had committed a burglary, the sheriff applied for and was granted a warrant for defendant's arrest. The affidavit did not state that the informer had any first hand knowledge that the defendant had committed the crime, *nor did it furnish a basis for determining that the informer was reliable*. It stopped with the mere allegation that the defendant had committed the crime. After obtaining the arrest warrant, the sheriff put out an all points bulletin to pick up and hold defendant. In this bulletin the sheriff furnished a description of the defendant, his automobile, and some of the goods allegedly taken from the house. Upon receiving this bulletin two patrolmen spotted defendant's automobile and effected an arrest. Just prior to the arrest, one patrolman asked defendant to identify himself, to which he responded with a false name. The defendant claimed that he was arrested without probable cause. The Supreme Court agreed. Relying on *Aguilar* and *Spinelli*, the Court first held that the affidavit in support of the arrest warrant patently failed to establish probable cause. Not only did it lack allegations respecting the accuracy of the informer's information, but it also lacked allegations from which the informer's reliability could be determined. While acknowledging that the arresting officers were entitled to rely on the police bulletin in making the arrest, the Court stated that if the officers who initiated the bulletin did not offer sufficient evidence to establish probable cause, any arrest based substantially on the bulletin would suffer from the same deficiency.[8] Turning

---

**5.** Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

**6.** 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

**7.** Brief for appellant at page 8, quoting Whiteley v. Warden, 401 U.S. 560, 567, 91 S.Ct. 1031, 1036, 28 L.Ed.2d 306, 312 (1971).

**8.** 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313 (1971). At this point the Court observed:

"We do not, of course, question that the Laramie police were entitled to act on the

next to the issue of whether, aside from the defective warrant, independent police activity was able to glean sufficient facts to establish probable cause, the Court found the arrest deficient in this respect also. The Court held that this was not a case where independent police investigatory work corroborated the information provided in the informer's tip, because prior to the arrest the police witnessed no activity on the part of defendant that would indicate that he had committed the burglary in question.

■■■■ In distilled form, *Whiteley* stands for two key propositions. First, police officers contacted by radio bulletin are entitled to rely upon a warrant issued to the party initiating the bulletin. Where, however, the warrant is issued without a sufficient showing of probable cause, any subsequent arrest made in substantial reliance on this warrant is constitutionally invalid. Secondly, *Whiteley* emphasized that where the government seeks to corroborate an otherwise insufficient informer's tip on the basis of an independent police investigation, it has to show that information acquired through the investigation tends to indicate that the defendant is in the process of committing, or has previously committed, a crime.[9]

In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), an informer who for several months had been providing narcotics agents with reliable information reported that defendant had gone to Chicago to receive a shipment of heroin and that he would return to Denver on a specified train with the drugs on his person. Although the evidence failed to show whether the informer had any first hand knowledge of the defendant's criminal activity, the informer described the defendant in meticulous detail, giving a description of defendant's physical appearance, the clothes which he would be wearing when he alighted from the train, the type of luggage he would be carrying, and the fact that defendant was in the habit of walking very fast. Relying on this information, federal narcotics agents met the train as it arrived in Denver and arrested the defendant at the station. The arrest was challenged as being without probable cause. The Supreme Court disagreed. It employed a two-step analytical process. The Court noted that the informer had always given accurate and reliable information in the past [which was shown in the case presently before us], and that every bit of his information with respect to the description of defendant had been independently verified by the officers who spotted defendant at the railroad depot. The Court then stated that since the agents had verified every bit of the description given them by the informer, they had reason to believe the remaining information that defendant was carrying narcotics.[10]

*Draper* preceded *Aguilar, Spinelli,* and *Whiteley* but its rationale is consistent with the analysis required by *Aguilar*: (1) the reliability of the informant and (2) the observation of corroborating facts taking place as predicted by that informant.[11]

strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest."

**9.** 401 U.S. at 567, 91 S.Ct. at 1036, 28 L.Ed.2d at 312, 313. In stating this rule, the Court was merely reaffirming a principle previously established in *Spinelli*. See Spinelli v. United States, 393 U.S. 410, 414, 89 S.Ct. 584, 588, 21 L.Ed.2d 637, 642, 643, 644, 645 (1969).

**10.** 358 U.S. 307, 312, 314, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 333, 334 (1959). See Justice White's discussion of the logic of *Draper* in his concurring opinion in *Spinelli*. Spinelli v. United States, 393 U.S. 410, 426, 427, 89 S.Ct. 584, 594, 595, 21 L.Ed.2d 637, 649, 650 (1969) (White, J., concurring).

**11.** See Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637, 643, 644 (1969).

The present appeal is considerably reminiscent of United States v. Squella-Avendano, 5 Cir., 1971, 447 F.2d 575. In that case we reversed the suppression of evidence involving 200 pounds of cocaine. The officers got on trail of the contraband through the reports of an informant who had not previously been used in connection with any other investigation. It was not known when or how the cocaine would arrive in Miami from Chile, but on July 26, 1970, the informant advised that the cocaine had arrived and that the defendants were attempting to rent a certain type of automobile which would be used to pick up and deliver the cocaine. Later, the informant supplied information concerning the make of the car and was able to give the last three digits of the license plate. The car was placed under surveillance. The next day it was seen parked beside an aircraft, where cartons were being unloaded from the airplane and into the car. The ensuing chase resulted in the arrest of the defendants. The *Squella-Avendano* opinion contains an exhaustive analysis of *Aguilar, Spinelli,* and *Whiteley*.[12] It was pointed out, 447 F.2d at 580, that "less detailed information from a reliable source may be used as grounds for a finding of probable cause if independent investigation by law enforcement agencies yields sufficient verification or corroboration of the informant's report to make it 'apparent that the informant had not been fabricating his report out of whole cloth' ".

■ Consistently with the teachings of *Whiteley*, the Port Lavaca officers who stopped the pickup truck properly relied on the bulletin broadcast from Beeville.

■ The issue is thus narrowed to whether officer Kline had probable cause to request the issuance of the bulletin. In view of the facts and legal principles herein discussed, we are of the opinion that he did.

In the first place, the original tip came from an informer previously found to be reliable, indeed so reliable that it appears he was allowed to enter the United States for the purpose of assisting in the apprehension of narcotics violators.

In the second place, his prediction that a turquoise and white pickup truck, occupied by two males, would be in Alice that afternoon proved to be correct. That truck was observed at what most likely was the meeting place named by the informant, else there would have been no report of a government agent observing the meeting in Alice, population 20,121, when he got the actual truck tag number.

Thirdly, before Kline caused the issuance of the bulletin the same informant had notified the officers who were working in concert that the heroin had, in fact, been delivered in Alice that afternoon.

This, of course, was not enough to convict of a crime beyond a reasonable doubt but it was enough to warrant a reasonably vigilant officer in believing that these two males in the truck of this description were engaged in violations of the narcotics laws, Draper v. United States, *supra*; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). It was enough that reasonable men could believe that the informant's report was not fabricated, United States v. Squella-Avendano, *supra*.

Accordingly, we hold that the appeal on this point is not well taken.

## II

### Consent to Search

"The officers and suspects arrived at the Sheriff's Office at approximately 7:30 p. m., at which time the suspects were booked, fingerprinted, photographed, charged with possession of heroin and required to change into white jail clothes. Shortly after this they were taken to the adjoining garage where the pickup truck was parked. Chief Deputy Joe Roberts advised Weeks and Cooper

12. See Footnote No. 5, *supra*. Also, United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

that he had reason to believe that there was heroin concealed in the vehicle, and he requested their permission to conduct a search. Weeks and Cooper responded that they knew nothing about any heroin and that Roberts could go ahead and look. The Chief Deputy then searched the vehicle and discovered approximately sixteen grams of heroin concealed in the truck heater hose."—This opinion, page 762, *ante.*

With the exception of the testimony of the appellant, which the District Court specifically discredited, there is not the slightest indication, from any source whatever, that before or during the search the officers used any kind of force, threats, intimidation or other form of coercion on Weeks or his traveling companion. Nor was consent obtained under the cloak of any asserted authority to search, such as an invalid search warrant. Rather, the record is clear that the men under arrest were informed that the presence of heroin was suspected and *permission was requested* in order to establish or negate that fact.

■ Petitioner-appellant launches a valiant attack on the validity of the consent, urging the absence of *Miranda* warnings [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] and non-compliance with the teachings of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

This "no consent" argument must be rejected in the light of our decision in United States v. Horton, 5 Cir., 1973, 488 F.2d 374, rehearing en banc denied:

> The arrest of the defendants was based on probable cause, and there is no indication in the record that the investigating officers used tactics that would augment the degree of the coercion that is inherent in any arrest. There is no evidence in the record of any intimidation, physical or psychological abuse, or threats tending to invalidate the consent. Although the suspects were not informed of their right to remain silent and that anything they said might be used against them, this is only one consideration in

assessing voluntariness. In light of all the surrounding facts and circumstances, we are convinced that the consent was voluntary. *Id.,* at 381.

See also Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), no *Miranda* advice but the consent to search was given prior to the arrest; also, United States v. Jones, 5 Cir., 1973, 475 F.2d 723, where at the time of consent Jones was handcuffed, in the presence of at least five F.B.I. agents, but the warnings had been given.

Since Weeks had been arrested on probable cause, the officer requesting permission to search had been informed of that probable cause by other officers, and the search took place immediately after the vehicle had been removed from the scene of the arrest to the Sheriff's Office, it was valid, Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Boyd, 5 Cir., 1971, 436 F.2d 1203; United States v. Chapman, 5 Cir., 1973, 474 F.2d 300; Carlton v. Estelle, 5 Cir., 1973, 480 F.2d 759. See also Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

Affirmed.