John Douglas DOESCHER, Appellant,

v.

The STATE of Texas, Appellee.

No. 54865.

Court of Criminal Appeals of Texas,
Panel No. 1.

Sept. 27, 1978.

Rehearing Denied March 21, 1979.

John C. Hendrik (court appointed on appeal only), Dallas, for appellant.

Henry M. Wade, Dist. Atty., William M. Lamb, David Schick, and John Ovard, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for aggravated robbery. Punishment was assessed at 75 years' imprisonment.

Appellant complains in his first ground of error that the trial court's findings of fact and conclusion of law to the effect that the State's witnesses' identification of appellant

as the armed robber was not irreparably tainted by a suggestive pretrial photograph lineup were erroneous.

■ The testimony of the two State witnesses (who subsequently identified appellant at the trial) at the pretrial hearing demonstrated that their identification of appellant was based primarily on their observations of him on the night of the robbery and not on the photograph presented to them in the photographic array consisting of seven mug shots. Both eyewitnesses testified that the detectives presenting the photographic arrays made no effort to influence their choice of photographs and both detectives denied attempting to influence the witnesses in their selection of any photograph. Our review of the photographic array utilized in the identification process reflects that seven mug shots were utilized, none of which carry any specific distinguishing marks that would impermissibly suggest which photograph was to be selected. Appellant's complaint that his photograph is the only one taken in front of a height indicator is of little consequence since no other photograph gave the respective heights of the other subjects in the photographic display. Therefore, all subjects could have been of the same approximate height. Our review of the facts of this case and the totality of surrounding circumstances demonstrates that the photographic display was not impermissibly suggestive and did not "give rise to a very substantial likelihood of irreparable misidentification." *White v. State*, 496 S.W.2d 642, 647 (Tex.Cr.App.); *Atkinson v. State*, 511 S.W.2d 293 (Tex.Cr.App.); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Appellant's first ground of error is overruled.

■ Appellant complains of certain deficiencies in the securing and execution of the search warrant upon which police officers searched appellant's home and seized various items admitted into evidence against him. Five particularized issues are raised by appellant in support of his contention that the search warrant and its execution were deficient. Certain basic principles control our disposition of appellant's Ground of Error No. 2. First, the affidavit given in support of securing a search warrant controls over the search warrant. *Riojas v. State*, 530 S.W.2d 298 (Tex.Cr.App.); *Oubre v. State*, 542 S.W.2d 875 (Tex.Cr. App.). Second, as appellant recognizes, the determination of the legal adequacy of an affidavit in support of a search warrant is to be made within the four corners of the document involved. *Jackson v. State*, 365 S.W.2d 935 (Tex.Cr.App.); *Aubre v. State*, supra; *Riojas v. State*, supra.

Appellant complains that the affidavit in support of the search warrant is insufficient for failing to present the reviewing magistrate sufficient surrounding circumstances upon which to conclude that the unnamed informants relied upon by affiant were reliable or credible or that the informants could conclude that the items sought by the search warrant were where they were purported to be. The pertinent portion of the affidavit reads:

"MY BELIEF OF THE AFORESAID STATEMENT IS BASED ON THE FOLLOWING FACTS:

I Officer D. H. Pfeifer, a police Detective for the city of Grand Prairie, have been investigating the aggravated robbery of the Buddies Supermarket on N. Carrier in Grand Prairie.

During the investigation officers found a white pick-up truck used in the robbery and positively identified by an eyewitness to the robbery as being used in the robbery.

A witness who knows John Doescher personally has stated to the affiant that, he observed Doescher drive up and park the pick-up used in the robbery where it was found. This witness saw this the night of the robbery and shortly thereafter. Two eyewitnesses of the robbery did positively identify John Doescher's photograph as being the robber. This identification occurred on this date of 1–9–75. The address to be searched is the address of John Doescher and Doescher has even listed this as his address with his parole

officer. Doescher is presently on parole for robbery and has been seen by the affiant entering and leaving 2038 Fort Worth Street on several occasions within the past two weeks. The license plate on the pick-up used in the robbery is registered to a man named Taggert at 2038 Fort Worth Street and the affiant knows Taggert to be a friend of Doescher.

On 1–9–75 person or persons unknown called the affiant by phone and stated 'that John Doescher robbed the Buddies store and has the gun and bag used in the robbery at 2038 Fort Worth Avenue at this time.'

Mrs. John Doescher, after being arrested and warned of her rights by officers, stated that part of the money taken in the robbery is at 2038 Fort Worth Street, Grand Prairie, Texas."

The implements identified in the affidavit and search warrant for seizure were "a yellow money bag and blue steel revolver pistol."

▆▆▆ It is clear from a review of the affidavit that, aside from appellant's wife, none of the informants upon whom the affiant relied are named or in any other way characterized as credible or reliable by the affiant. See *Avery v. State*, 545 S.W.2d 803 (Tex.Cr.App.); *Carvajal v. State*, 529 S.W.2d 517 (Tex.Cr.App.); *Adair v. State*, 482 S.W.2d 247 (Tex.Cr.App.). Nevertheless, the failure to allege prior reliability is not necessarily a fatal defect in the affidavit. *Adair v. State*, supra; *Abercrombie v. State*, 528 S.W.2d 578 (Tex.Cr.App.). Affidavits in support of search warrants are to be interpreted in "a commonsense and realistic fashion." *U.S. v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Of significant relevance to the determination of whether probable cause exists for the issuance of the search warrant is any corroboration by the affiant of the hearsay

declarations which are presented to the magistrate in the affidavit. *Spinelli v. U.S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). As stated in *Frazier v. State*, 480 S.W.2d 375 (Tex.Cr.App.):

"In order for an affidavit to show probable cause, it must set forth sufficient circumstances to enable a magistrate to judge, independently, the validity of the affiant's belief that contraband is at the place to be searched." *Id.* at 379.

Although the above excerpt from *Frazier* refers to contraband, it is clear that a search warrant is appropriate to seize "property acquired by theft or in any other manner which makes its acquisition a penal offense" (Article 18.02(1), V.A.C.C.P.) or "implements or instruments used in the commission of a crime" (Article 18.02(9), V.A.C.C.P.).[1]

A distinction has always been recognized between the hearsay statements of unnamed confidential informants who are regularly involved in nefarious activities with the criminals upon whom they inform and citizen eyewitnesses to a crime, when an assessment of their credibility and/or reliability is involved. This Court has never stated that the distinction is sufficient to eliminate the necessity of either naming the eyewitness or presenting some statement to the magistrate that would allow him to determine that the eyewitness informant is credible and/or reliable. *Avery v. State*, supra; *Frazier v. State*, supra; *United States v. Bell*, 457 F.2d 1231 (5th Cir., 1972).

The affidavit in this case shows that the affiant's knowledge about the presence of a bag and gun and their location was obtained by an anonymous telephone tip. Nothing in the affidavit reflects that the affiant's investigation of this robbery up to the time of the tip or afterwards established that a gun and/or bag was used in the course of the robbery. Although the magistrate was apprised that the crime being investigated was aggravated robbery, we

1. Article 18.02, V.A.C.C.P., has now been amended to include "property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." Acts 1977, 65th Leg., p. 640, ch. 237, § 2, effective May 25, 1977. See also *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

note that aggravated robbery can be committed without the necessary involvement of a deadly weapon. It can be committed with the causation of serious bodily injury in the course of committing robbery. The affiant's investigation and corroboration of other hearsay information provided him from eyewitnesses to the robbery do not cure the deficiency that exists in this affidavit with respect to the actual items identified in the affidavit and search warrant for seizure. Thus, the magistrate was not apprised of any fact, information, or "underlying circumstances" to permit him to conclude that the "yellow money bag and blue steel revolver pistol" were connected with the aggravated robbery or at the location identified for search in the affidavit. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

However, the State contends there to be no error since the searching police officers had also obtained the consent of appellant's wife to search the same premises prior to the search. Appellant's third ground of error alleges that his wife's consent to the police officers to search their residence was legally insufficient and that any items seized pursuant thereto should have been suppressed by the trial court. We agree with the appellant.

 Whether a consent to search is voluntary is a question of fact to be determined from the totality of the circumstances surrounding the giving of that consent. *Kolb v. State*, 532 S.W.2d 87 (Tex.Cr.App.). That Mrs. Doescher could give consent for the search of the premises is beyond dispute. See *Collins v. State*, 548 S.W.2d 368 (Tex.Cr.App.). A search conducted pursuant to consent is one of the specifically established exceptions to the Fourth Amendment requirements of both the warrant and probable cause. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Davis v. United States*, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); *Rice v. State*, 548 S.W.2d 725 (Tex. Cr.App.). One's protected right to privacy can be waived through the consent to search. Article I, Section 9, Texas Consti-

tution; Fourth Amendment, U.S. Constitution; *Kolb v. State*, supra; *Paprskar v. State*, 484 S.W.2d 731 (Tex.Cr.App.).

 However, a search cannot be justified as lawful on the basis of consent where that "consent" has been given only after the official conducting the search asserts that he has a warrant. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Stephenson v. State*, 494 S.W.2d 900 (Tex.Cr.App.); *Evans v. State*, 530 S.W.2d 932 (Tex.Cr.App.). Further, the burden is upon the prosecution to show that the consent was freely and voluntarily given. *Bumper v. North Carolina*, supra.

 The question of whether a voluntary consent to search is ever possible in the face of an assertion that the investigating officers presently have a search warrant has never been answered. *Bumper v. North Carolina*, supra, leaves the impression that the answer would be negative. The Supreme Court wrote:

"The issue thus presented is whether a search can be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.

When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid.

\* \* \* \* \* \*

When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where

there is coercion there cannot be consent." Id. 391 U.S. at 548–550, 88 S.Ct. at 1791–1792.

The coerciveness of the claim of authority is no less when made at the police station, as was done here, than at the doorstep of the premises to be searched.[2] Nor does the printed warning of one's right not to consent to a search lessen the coercion inherent in a claim of lawful authority to search under a search warrant. Finally, an otherwise cooperative predisposition on the part of the consenting party cannot salvage a "consent" obtained under such circumstances, as is abundantly demonstrated under the facts of Bumper v. North Carolina, supra.

We therefore hold, as a matter of law, that there can be no voluntary consent to search if the officers securing the "consent" assert that they presently possess a search warrant to search the premises for which "consent" is sought.

Even were we to conclude that a "voluntary consent" to search is conceivable in the face of a law enforcement officer's claim of lawful authority to search pursuant to a presently possessed search warrant, we would have to conclude that the prosecution

has failed to carry its burden of proving that, under the totality of the surrounding circumstances, Mrs. Doescher's consent was voluntary, as a matter of fact. Bumper v. North Carolina, supra; Schneckloth v. Bustamonte, supra. The precise question confronting the Supreme Court in the latter case was what the prosecution had to prove in order to establish a voluntary consent to search and, concomitantly, whether the person consenting had to know of his right to refuse consent. The court concluded that such knowledge was but one element in the totality of circumstances to be considered in making a factual determination of "voluntariness."

The evidence adduced at the hearing on appellant's motion to suppress reflects that Mrs. Doescher was arrested and searched in Arlington at about 9:00 p. m. on the night in question. Certain currency was seized from her at that time. She was transported to the Grand Prairie police station where she executed the consent to search form at about 10:00 p. m., while in custody.[3] Before executing the form, Mrs. Doescher was told that the police already possessed a search warrant.[4] The police also reassured her that measures would be taken to minimize

**2.** V.T.C.A., Penal Code, Sec. 38.03, provides:
"(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest or search of the actor or another by using force against the peace officer or another.
(b) It is no defense to prosecution under this section that the arrest or search was unlawful."

**3.** WAIVER OF SEARCH
Date 1–9–75
Time 9:30P
I, *Vickey Lynn Doescher*, having been informed by *Sgt. D.D. Sherman* of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse consent to such a search, hereby authorize *Sgt. Sherman* and *Raymond Whitley* policemen of the Grand Prairie Police Department, City of Grand Prairie, Dallas County, Texas, to conduct a complete search of my residence located at *2038 Ft. Worth.* These officers are authorized by me to take from my residence any and every type of narcotic drug, barbiturate of amphetamine, or any other property

which may be in violation of the laws of The State of Texas or of the United States. This written permission is being given by me to the above named officers voluntarily and without threats or promises of any kind and is given with my full and free consent.
Signature /s/Vickey Doescher
Witness: /s/Shearon Sandhop

**4.** Mrs. Doescher testified she was told that the police had a search warrant by one of the interrogating officers. Detective Pfeifer denied being present when the consent form was executed. Sgt. Sherman, who actually obtained Mrs. Doescher's signature on the consent form, testified that he could not recall whether he told Mrs. Doescher about the search warrant. The testimony shows that several detectives were present in the course of Mrs. Doescher's interrogation, including Detectives Pfeifer, Sherman, and Whitley. Only Detective Pfeifer denied telling Mrs. Doescher that he already had a search warrant. The record further reflects that the search warrant was *executed* at the residence between 10 and 10:30 p. m., January 9, 1975, "a couple of hours" after it was *issued.*

any disturbance to her ill father attendant upon any search.[5] There was no evidence upon whether Mrs. Doescher received her *Miranda*[6] warnings upon being arrested or arriving at the Grand Prairie police station. It is clear from the testimony of Mrs. Doescher that she concluded a search was inevitable, regardless of her consent vel non.

■ Upon consideration of the totality of surrounding circumstances, we conclude that the prosecution failed to carry its burden of proving by clear and convincing evidence that Mrs. Doescher's consent was freely and voluntarily given. *Escamilla v. State*, 556 S.W.2d 796 (Tex.Cr.App.). Although the consent form ostensibly informed Mrs. Doescher of her right to refuse consent, the facts of her custody and being informed of a presently possessed search warrant establish that her consent was coerced, albeit implied and lawful. See *Bumper v. North Carolina*, supra; *Schneckloth v. Bustamonte*, supra; *Evans v. State*, supra; *Kolb v. State*, supra; cf. *Tamez v. State*, 534 S.W.2d 686 (Tex.Cr.App.).

We therefore hold that the search of appellant's premises violated his right to remain secure from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 9, of the Texas Constitution.

However, the question still remains of whether the error was harmless.

First, none of the items seized in the course of the search of 2038 Ft. Worth Street on January 9, 1975, were admitted into evidence. Rather, their seizure and identification were testified to. Second, approximately $10,800.00 was stolen in the alleged robbery at gunpoint; some of the

currency being new bills, some old. Mrs. Doescher voluntarily surrendered approximately $6,478.00 to the police from the premises two days after the search. This currency was identified as being bound similarly to some of that taken in the instant robbery. Third, two eyewitnesses positively and unequivocally identified appellant as the perpetrator.

In light of the totality of this record, we are convinced, beyond a reasonable doubt, that the jury would not have reached a contrary conclusion as to appellant's guilt or innocence absent the testimony relating to the various items seized in the course of the search complained of here. We are of the opinion that the error of the trial court in permitting testimony to be introduced concerning these items was harmless beyond a reasonable doubt. See *Clemons v. State*, 501 S.W.2d 92 (Tex.Cr.App.); *Clay v. State*, 518 S.W.2d 550 (Tex.Cr.App.); *Bridger v. State*, 503 S.W.2d 801 (Tex.Cr.App.); *Holcomb v. State*, 484 S.W.2d 929 (Tex.Cr.App.); *Cole v. State*, 484 S.W.2d 779 (Tex.Cr.App.).

We have reviewed appellant's pro se supplemental briefs and have concluded that their consideration would add nothing to the jurisprudence of this State and are hereby overruled.

The error in this case being harmless beyond a reasonable doubt, the judgment is affirmed.

Before the court en banc.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

DOUGLAS, Judge.

Appellant was convicted for aggravated robbery. Punishment was assessed by the court at seventy-five years.

---

**5.** The police picked up Mrs. Doescher's brother before searching the house in order to comply with their promise to Mrs. Doescher.

**6.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We are mindful of the rule of *Schneckloth v. Bustamonte* supra, that an express warning of one's right to refuse consent is not a condition precedent to a voluntary consent by a person *not* in custody. In

this vein, the purpose for the prophylactic measures mandated by *Miranda* was to mitigate the inherent coerciveness of station house interrogations. This "reality" of law enforcement is not irrelevant to a determination of the "voluntariness" of a consent to search, especially in light of the Supreme Court's reference to Fifth Amendment cases in *Schneckloth v. Bustamonte*, supra.

The Court, on original submission, held that the search warrant upon which appellant's house was searched was defective because the affidavit supporting it failed to present sufficient surrounding circumstances upon which the reviewing magistrate could judge either the reliability and credibility of the unnamed informants or determine that the items in question were where they were alleged to be. The Court concluded, however, that the error was harmless in light of the totality of the record.

Appellant points out that the opinion on original submission recited that none of the items found during the search was admitted into evidence. These items were not formally introduced but they were exhibited before the jury after testimony had been admitted that they were taken as a result of the search. Because of this, we have again examined the affidavit and the search warrant. We now conclude that the affidavit is sufficient to show probable cause for the search.

The affidavit in question states in relevant part:

"MY BELIEF OF THE AFORESAID STATEMENT IS BASED ON THE FOLLOWING FACTS:

"I, Officer D. H. Pfeifer, a police Detective for the city of Grand Prairie, have been investigating the aggravated robbery of the Buddies Supermarket on N. Carrier in Grand Prairie.

"During the investigation officers found a white pick-up truck used in the robbery and positively identified by an eyewitness to the robbery as being used in the robbery.

"A witness who knows John Doescher personally has stated to the affiant that he observed Doescher drive up and park the pick-up used in the robbery where it was found. This witness saw this the night of the robbery and shortly thereafter. Two eyewitnesses of the robbery did positively identify John Doescher's photograph as being the robber. This identification occurred on this date of 1–9–75. The address to be searched is the address of John Doescher and Doescher has even listed this as his address with his parole officer. Doescher is presently on parole for robbery and has been seen by the affiant entering and leaving 2038 Fort Worth Street on several occasions within the past two weeks. The license plate on the pick-up used in the robbery is registered to a man named Taggert at 2038 Fort Worth Street and the affiant knows Taggert to be a friend of Doescher.

"On 1–9–75 person or persons unknown called the affiant by phone and stated 'that John Doescher robbed the Buddies store and has the gun and bag used in the robbery at 2038 Fort Worth Avenue at this time.'

"Mrs. John Doescher, after being arrested and warned of her rights by officers, stated that part of the money taken in the robbery is at 2038 Fort Worth Street, Grand Prairie, Texas."

 It is well settled that independent corroboration on the part of the affiants or informants may be used to supply deficiencies in either of the *Aguilar* requirements. *Wood v. State*, 573 S.W.2d 207 (Tex.Cr.App.1978); *Stoddard v. State*, 475 S.W.2d 744 (Tex.Cr.App.1972). See *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Frazier v. State*, 480 S.W.2d 375 (Tex.Cr.App.1972). To show probable cause the affidavit must set out sufficient circumstances to enable the magistrate to independently determine whether the affiant's beliefs are valid. *Lopez v. State*, 535 S.W.2d 643 (Tex.Cr.App.1976); *Frazier v. State*, supra. `Although no magical formula exists for stating probable cause in affidavits, they are to be interpreted in a "commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

In *Lopez v. State*, supra, the affidavit in support of the search warrant was based on the hearsay statements of a named informant to the effect that he had seen the defendant moving bloodstained bumper jacks from a car on the premises and had observed blood on the car's tires. The informant lived across the street from the defendant and was described as "gainfully

employed." The defendant challenged the affidavit because it failed to show that the informant was credible or reliable. After noting that hearsay information in an affidavit is sufficient to satisfy the *Aguilar* test provided the informant is named and the information supplied suggests that the informant had direct knowledge of it, this Court held that since the informant lived across the street from the premises to be searched, was gainfully employed and gave detailed information, his credibility was sufficiently established to justify the issuance of the warrant.

In *Hester v. State*, 544 S.W.2d 129 (Tex. Cr.App.1976), the affidavit was based solely on the hearsay statements of the co-defendant's wife to the effect that she saw furniture stolen in a burglary by her husband and his co-defendant unloaded at the address to be searched. The affidavit named the informant but contained no other statements regarding her credibility. The Court held that the allegations in the affidavit were sufficient probable cause to support the issuance of a search warrant. See *Wood v. State*, supra.

■ In the case at bar, the affidavit named the wife of appellant as an informant and stated that she had told officers that money obtained in the robbery was in the house to be searched. Two eyewitnesses to the robbery positively identified appellant as the robber. The address of the premises to be searched, 2038 Fort Worth Street, was given by appellant as his address to his parole officer. Appellant was on parole for robbery and he was observed by the affiant entering and leaving the address on several occasions within two weeks prior to making the affidavit. The truck identified as being used by the robber is registered to a man named "Taggert" at 2038 Fort Worth Street whom the affiant knew to be appellant's friend.

In *United States v. Squella-Avendano*, 447 F.2d 575 (5th Cir. 1971), the court noted the development of a three-tiered method of analyzing whether the *Aguilar* tests have been met and stated in part:

"Secondly, less detailed information from a reliable source may be used as grounds for a finding of probable cause if independent investigation by law enforcement agencies yields sufficient verification or corroboration of the informant's report to make it 'apparent that the informant had not been fabricating his report out of whole cloth.' *Spinelli v. United States*, supra.

" . . .

"If sufficient corroborative evidence can be collected to support a clear inference that the informer was generally trustworthy, then *Aguilar's* second requirement is met."

See and cf. *Abercrombie v. State*, 528 S.W.2d 578 (Tex.Cr.App.1974). See also *Whiteley v. Warden of Wyoming Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Weeks v. Estelle*, 509 F.2d 760 (5th Cir. 1975).

Based on these recitations, we conclude that the magistrate was warranted in determining that the named informant was credible and the information given was reliable.

The affiant had talked to an anonymous informant who advised him that appellant had participated in the robbery and that the money bag and gun could be found at 2038 Fort Worth Street. This information, coupled with that set out above, was sufficient to place the gun and money bag at appellant's residence, 2038 Fort Worth Street. See *Wood v. State*, supra.

For these reasons, the appellant's motion for rehearing is denied.

The judgment is affirmed.

ROBERTS and CLINTON, JJ., dissent.