

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

Nos. 04-22-00727-CR, 04-22-00728-CR

The **STATE** of Texas,
Appellant

v.

Erik **RODRIGUEZ**,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2021-CR-0699 & 2021-CR-0735
Honorable Velia J. Meza, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice
Dissenting Opinion by: Patricia O. Alvarez, Justice

Sitting:     Patricia O. Alvarez, Justice
             Liza A. Rodriguez, Justice
             Lori I. Valenzuela, Justice

Delivered and Filed: April 17, 2024

AFFIRMED

The State appeals from the trial court's grant of appellee Erik Rodriguez's motion to suppress. We affirm.

### BACKGROUND

The genesis of this case was an internal investigation by the San Antonio Police Department of Rodriguez—a patrol officer—for his interference in a domestic violence case being investigated by SAPD.

According to the State, Jeremiah Gonzalez assaulted his girlfriend, Christopher Sherer. Sherer made a police report. Gonzalez received a copy of the police report from someone within SAPD. Angry about the report, Gonzales retaliated and again assaulted Sherer. Later, Sherer told SAPD about Gonzalez's contact with a friend inside SAPD. SAPD detective Aisha Jackson sought to identify who Gonzalez had contacted: She ran a "Clear Report" on Gonzalez to learn his associates and cross-checked them against the "inter-department system." She discovered Rodriguez had worked on the date the reported call took place—January 6, 2021—and would have had access to the reported confidential information. Jackson next obtained a warrant to seize and search Gonzalez's phone. Gonzalez's phone revealed he was communicating with "Erik Rodriguez" on January 6, 2021.

Jackson saw that Gonzalez texted Rodriguez: "What the word bird" and "send me your cash app too." Rodriguez responded with his cash app information and "send case # again." Gonzalez asked Rodriguez what he found on the case. Rodriguez responded in a series of texts: "She was fuked up"; "State will pick up"; "She never responded on follow up"; "Photos were taken and her Statement." Gonzalez asked, "What statement say[?]" Rodriguez responded by calling Gonzalez. The phone call lasted a little over four minutes. Jackson also found a cash app transaction on Gonzalez's phone documenting a payment of $100 to Rodriguez "For dinner."

Jackson next obtained, from a magistrate, a warrant to seize "[a]ny type of cellular device or cellular communication device" located at Rodriguez's home or on his person and search through a virtually unlimited amount of data. The next morning, Jackson and her boss approached Rodriguez at a lieutenant's office at the west substation. Rodriguez was holding his phone. Jackson presented the warrant to him and collected his phone. She asked Rodriguez if the phone was his personal phone and he said yes. She then invited Rodriguez to downtown headquarters for an interview. Rodriguez drove himself to headquarters. Before the interview, Jackson asked

Rodriguez for consent to search the phone. Jackson signed a written consent form authorizing a "complete search" of the phone.

Jackson Mirandarized then interviewed Rodriguez, who admitted he accessed the keycard containing information about the police report and relayed it to Gonzalez. After the interview, Jackson manually searched through Rodriguez's phone and found the incriminating correspondence and payment. Jackson obtained a second warrant specific to the phone she had seized, this time from a district judge, apparently to comply with Texas Code of Criminal Procedure article 18.0215. That article requires, in part, that only a judge can issue a warrant to search a cell phone, and the cell phone must be specifically identified. TEX. CODE CRIM. PROC. art. 18.0215(b), (c).

William Disoso, a senior crime analyst for the City of San Antonio, relying on the consent form and the second warrant, extracted the data on the phone "without limitation." Disoso turned the extracted data over to Jackson. Based on the extraction, Jackson sought and obtained six more warrants for evidence of "Cockfighting, Gambling, and Possession of Child Pornography." These warrants authorized the search of Rodriguez's home and property, eleven devices (including computers and flash drives) seized from his home, a Google drive account, Yahoo accounts, six Facebook accounts, and (via grand jury summons) bank accounts.

Rodriguez was indicted in two cases, in the first, for possession of child pornography, and in the second, for misuse of public information and bribery. Rodriguez filed a motion to suppress his statements and all tangible evidence seized. Rodriguez argued that the original warrant, used to seize and manually search his phone, failed to provide: (1) a nexus between his phone and the alleged crime of misuse of official information; (2) any particularity as to where within the phone the evidence would be found; and (3) any parameters necessary to limit the scope of the search. He argued these failures resulted in an overbroad warrant inviting a general exploratory search of

the phone. Rodriguez also argued his consent was not voluntary; he had just been shown the warrant, and he was following orders from his superiors, while on duty and in uniform, and subject to the duties and responsibilities of his job, which included giving information in an internal investigation. Rodriguez argued all the evidence against him was acquired as a factual result of the illegal conduct and so constituted fruit of the poisonous tree. In an addendum to the motion, Rodriguez argued that the first warrant also failed to comply with article 18.0215.

In response, rather than rely on the first warrant, the State argued that Jackson lawfully seized Rodriguez's phone under the plain view doctrine, and then lawfully searched it pursuant to Rodriguez's consent. Alternatively, the State argued that if the seizure were illegal, Rodriguez's consent attenuated the taint. The State also alternatively argued that the second warrant—valid under both article 18.0215 and the Fourth Amendment—was independently sourced. In a supplemental response, the State argued article 18.0215 does not apply because it only governs searches of phones seized pursuant to arrest.

At the motion to suppress hearing, both Jackson and Disoso testified. Jackson acknowledged that, in the affidavit for the first search warrant, she did not provide the magistrate with the specific facts she possessed linking Rodriguez's phone to the crime of misuse of official information. Disoso testified he extracted the data on the phone at Jackson's office "after hours" because he was told "we needed to get it done as soon as possible." Asked by the trial court what his understanding was of what he was to extract, Disoso said, "I was not given, like, a limit." The trial court filed findings of fact and conclusions of law granting the motion to suppress. The trial court concluded "that the first warrant was invalid" and the seizure and search were not saved by the plain view doctrine, consent doctrine, or independent source doctrine. The State appeals.

ANALYSIS

On appeal, the State acknowledges that the warrant affidavit supporting the first warrant was "short on probable cause" but argues that the collection of evidence was nevertheless lawful under the plain view, consent, and independent source doctrines.

### *Applicable Law and Standard of Review*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. "Generally, the Fourth Amendment requires that searches and seizures be accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be searched or seized." *Igboji v. State*, 666 S.W.3d 607, 613 (Tex. Crim. App. 2023). Thus, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). Among others, these include the plain view doctrine, *Horton v. California*, 496 U.S. 128, 136–140 (1990), and consent, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. art. 38.23(a). But not all evidence is "'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police." *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). A legal break in the causal connection between the illegal conduct and the acquisition of the evidence will dissipate the taint. *Monge v. State*, 315 S.W.3d 35, 40–41 (Tex. Crim. App. 2010). "[E]vidence sufficiently attenuated from the violation of the law is not considered to be 'obtained'" from the violation. *Johnson v. State*, 871 S.W.2d

744, 750–51 (Tex. Crim. App. 1994). Nor is "evidence actually obtained pursuant to a distinct, untainted source" where "the prior illegality does not contribute in any way to discovery of the evidence[.]" *Wehrenberg v. State*, 416 S.W.3d 458, 469 (Tex. Crim. App. 2013) (internal quotation marks omitted).

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We apply a bifurcated standard of review. *Id.* at 922–23. We give trial courts nearly total deference in determining historical facts that depend on credibility and demeanor. *Id*. at 923. But we review a trial court's resolution of whether a particular search or seizure was reasonable de novo. *Igboji*, 666 S.W.3d at 612. We reverse "the trial court's ruling only if it is outside the zone of reasonable disagreement." *Martinez*, 348 S.W.3d at 922.

### *Plain View*

"A seizure of an object is lawful under the plain view exception if three requirements are met." *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). "First, law enforcement officials must lawfully be where the object can be plainly viewed. Second, the incriminating character of the object in plain view must be immediately apparent to the officials. And third, the officials must have the right to access the object." *Id*. (internal quotation marks and footnotes omitted).

Relying on the second prong, the trial court held that the plain view doctrine did not apply because "there was no evidence that *that* phone's incriminating nature was immediately apparent to Detective Jackson at the moment of seizure" (emphasis in original). The trial court pointed to Jackson's testimony that when she seized Rodriguez's phone, "she did not have any direct knowledge that that was the phone that was involved in the communication between Mr. Rodriguez and Mr. Gonzalez." Jackson "had a phone number that was Erik Rodriguez's phone number; she

just didn't know if that phone number was the phone he had in his hand—not until he provided it and said it was."

Jackson's acknowledgment that the incriminating nature of the phone in Rodriguez's hand was not "immediately apparent" would not invalidate the seizure if that seizure were objectively reasonable. *See Walter v. State*, 28 S.W.3d 538, 541–43 (Tex. Crim. App. 2000). But for the plain view doctrine to apply, "probable cause is required." *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). And probable cause must exist "at the moment" the seizure is made. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).

We conclude the trial court did not abuse its discretion in ruling that further investigation was necessary to establish probable cause. *See Hicks*, 480 U.S. at 323–24, 329 (seizure of stolen stereo equipment not justified under plain view doctrine where officers obtained probable cause to believe it was contraband only after moving the equipment to permit officers to read its serial numbers). Jackson had not, for instance, seen a text message on the screen of the phone that tied Rodriguez to Gonzalez or previously identified the model of phone Rodriguez had used to communicate with Gonzalez. *Cf. LopezGamez v. State*, 622 S.W.3d 445, 450–51, 456–57 (Tex. App.—Fort Worth 2020, pet. ref'd) (seizure of Samsung Galaxy Note 7 phone reasonable under the plain view doctrine because officer knew from initial investigation that victim's profile had been accessed through a Samsung Galaxy Note 7).

We agree with the State that certainty that the phone in plain view is the phone that was used for the criminal activity being investigated is not a prerequisite to plain view seizure. *See Texas v. Brown*, 460 U.S. 730, 742 (1983). But the probable cause/immediately apparent standard does impose a nexus hurdle before a phone, a device that can "receive, store, and transmit an almost unlimited amount of private information" and can contain "the most intimate details of a person's individual life, including text messages, emails, banking, medical, or credit card

information, pictures, and videos" can be seized. *See State v. Granville*, 423 S.W.3d 399, 408, 415 (Tex. Crim. App. 2014) (addressing search of phone; noting that the object of the search "makes all the difference" in the Fourth Amendment analysis); *State v. Baldwin*, 664 S.W.3d 122, 134 (Tex. Crim. App. 2022) (addressing affidavit for search of phone; noting that probable cause requirement is met when particularized facts establish a nexus between criminal activity and the phone). Cellphones are not inherently incriminatory like illegal weapons or drugs. The trial court's holding that the incriminating character of the object in plain view was not immediately apparent is supported by the evidence and comports with *Hicks*.

Our standard of review requires us to uphold the trial court's ruling unless it is outside the zone of reasonable disagreement. *See Martinez*, 348 S.W.3d at 922. But on this record, reasonable minds *could* disagree whether the incriminating nature of the phone in Rodriguez's hand was immediately apparent. Because the trial court's ruling is not outside the zone of reasonable disagreement, we must overrule the State's contentions to the contrary.

### *Consent*

The State next argues that the taint of any illegal seizure was attenuated by the circumstances under which Rodriguez provided consent. For consent to attenuate taint, it must be both voluntary and not an exploitation of the prior illegality. *Brick v. State*, 738 S.W.2d 676, 680–81 (Tex. Crim. App. 1987). "The validity of an alleged consent to search is a question of fact to be determined from all the circumstances." *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). To determine whether consent was an exploitation of the prior illegality, a court considers three factors: (1) the temporal proximity between the misconduct and discovery of the evidence; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the police misconduct. *See State v. Mazuca*, 375 S.W.3d 294, 303–04 (Tex. Crim. App. 2012). Because issues

of consent are necessarily fact intensive, a trial court's ruling on them must be accepted on appeal unless it is clearly erroneous. *Meekins v. State*, 340 S.W.3d 454, 459–60 (Tex. Crim. App. 2011).

The trial court, while not directly commenting on voluntariness, held the circumstances did not support a finding of attenuation. The trial court found:

- "Detective Jackson seized the cell phone [pursuant to the first warrant] about thirty minutes before she asked Rodriguez for his consent to search it."

- "Although there was no apparent police misconduct here that was calculated to force Rodriguez's consent to search, it is undisputed that Rodriguez only gave consent after his consent was requested by Detective Jackson."

- "And, even though Detective Jackson believed that the first warrant only authorized the seizure of the cell phone, the warrant was not expressly limited to just the seizure of the phone."

The trial court concluded that, given all the circumstances, the consent "did not attenuate the taint of the illegality of the first warrant." This conclusion adheres to case law discounting consent acquired after the existence of a warrant is announced. *See Bumper v. North Carolina*, 391 U.S. 543, 549 (1968) (search cannot be justified as lawful based on consent gathered after official conducting the search stated that he has a warrant); *Doescher v. State*, 578 S.W.2d 385, 389–90 (Tex. Crim. App. [Panel Op.] 1978) (same).

The fact-intensive nature of the trial court's ruling requires us to accept the trial court's conclusion unless it is clearly erroneous. Given the trial court's findings, we cannot say the trial court clearly erred in determining Rodriguez's consent did not attenuate the taint. *Brick*, 738 S.W.3d at 680–81; *Meekins*, 340 S.W.3d at 460. We overrule the State's contentions to the contrary.

### Second Warrant as Independent Source

Finally, the State argues that the second warrant is valid because its probable cause is independent of any previous Fourth Amendment violation. The independent source doctrine

provides that evidence gathered pursuant to a distinct, untainted source—post a Fourth Amendment illegality—is not subject to suppression. *Wehrenberg*, 416 S.W.3d at 469–72. The prior illegality cannot contribute *in any way* to discovery of the evidence seized. *Id*. at 469.

The trial court found "that the detailed information that allowed police to secure a second warrant pursuant to Article 18.0215 would not have come about without their acquiring the phone through the first warrant." We agree. Jackson testified that she did not use any information gleaned from her questioning of Rodriguez or her manual search of his phone in the second warrant. But, as the State acknowledges, it was her questioning and manual search of the phone that allowed her to identify the phone she collected pursuant to the first warrant, the one the State agrees failed to set out probable cause, as the one connected to the crime being investigated. The State nevertheless argues that article 18.0215 does not apply to warrants for cell phones not collected incident to arrest, and the remaining information satisfies the independent source doctrine.

Article 18.02 provides that a search warrant may be issued to search for and seize a phone "subject to Article 18.0215." TEX. CODE CRIM. PROC. art. 18.02(a)(14). Article 18.0215 is entitled "Access to Cellular Telephone or other Wireless Communications Device" and subsection (b) and (c) set out the requirements for the application and issuance of a warrant to search a cellular phone. TEX. CODE CRIM. PROC. art. 18.0215(b), (c). Subsection (a) clarifies that a phone cannot be searched without such a warrant, even if the phone has been collected incident to a lawful arrest. TEX. CODE CRIM. PROC. art. 18.0215(a). Jackson's understanding was that she needed an article 18.0215 warrant to forensically search the phone—regardless of how it was seized. That is a common sense understanding of the statute.

Regardless, as Rodriguez notes, the nexus requirement encoded into article 18.0215(c) is akin to the particularity requirement of the Fourth Amendment. *See Baldwin*, 664 S.W.3d at 131–33. Given the lack of a legal break in the causal connection between the illegal conduct and the

acquisition of evidence, the evidence was actually "obtained in violation of law" and it must be excluded under the Texas exclusionary rule regardless of whether it might later have been "obtained" lawfully. *See State v. Daugherty*, 931 S.W.2d 268, 269 (Tex. Crim. App. 1996) (construing article 38.23(a)). In a true "independent source" case, no information on which the warrant was secured is derived from or related in any way to the prior illegality. *Cf. Segura v. United States*, 468 U.S. 796, 814 (1984). Therefore, the trial court did not abuse its discretion in holding that the State's unconstitutional shortcuts led to the second warrant. We overrule the State's contentions to the contrary.

## CONCLUSION

In this case, the facts raise competing inferences. But "[t]he prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011). Because the record supports the trial court's conclusions, based upon the totality of its factual findings—that the doctrines of plain view, attenuation of taint and independent source do not apply—we uphold the trial court's ruling. *Martinez*, 348 S.W.3d at 922; *Igboji*, 666 S.W.3d at 612. Having overruled the State's issues, we affirm the trial court's order.

Lori I. Valenzuela, Justice

DO NOT PUBLISH

- 11 -